# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| WILLIE T. DONALD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-32-TLS-JPK |
| | ) | |
| BRUCE OUTLAW, *et al.*, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Quash Subpoena [DE 92], filed by non-party the United States of America on April 5, 2019, and Plaintiff's Cross-Motion to Compel Special Agent in Charge Grant Mendenhall to Comply with Plaintiff's Fed. R. Civ. P. 45 Subpoena ("Cross-Motion to Compel") [DE 101], filed by Plaintiff Willie T. Donald on April 20, 2019. For the following reasons, the Motion to Quash is granted and the Cross-Motion to Compel is denied.

Donald was convicted of robbery and murder following a trial in June 1992. (Compl. ¶ 73, ECF No. 1). His convictions were subsequently overturned on January 25, 2016, and all charges against him were dismissed on January 28, 2016. *Id.* at ¶ 78. On January 24, 2017, Donald filed suit against the two police officers primarily responsible for his conviction and the City of Gary, among other parties. *See generally id.* As discussed in more detail below, the gravity of Donald's claims weighs heavily in his favor, yet ultimately cannot justify the overly broad nature of his discovery request.

In February of 2019, Donald served a subpoena on Federal Bureau of Investigation (FBI) Special Agent in Charge (SAC) Grant Mendenhall, seeking production of the following documents:

> 1. Any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or

persons acting on its behalf: (a) relating to or involving allegations, evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Defendant Bruce Outlaw, including but not limited to the investigation that resulted in the prosecution of Cory House, Kenneth Wilson and Derrick Earls; or (b) in which Outlaw was a subject or target of an investigation.

2. Any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf: (a) relating to or involving allegations, evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Defendant John E. Jelks, Jr.; or (b) in which Jelks was a subject or target of an investigation.

3. For the period January 1, 1987 through December 31, 1992, any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf relating to or involving allegations, evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Gary Police Department personnel and/or the Gary Police Department, including but not limited to documents relating to: (a) the investigation and prosecution of Cory House, Kenneth Wilson and Derrick Earls; and (b) John Bauswell.

4. To the extent not covered by Requests 1 through 3, above, any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf relating to or involving evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Gary Police Department personnel and/or the Gary Police Department, including but not limited to any of its officers (whether full-time, part-time or [auxiliary]), employees, contractors, informants and agents.

(Mem. Supp. Mot. Quash 2-3, ECF No. 93; Pl.'s Mem. Opp'n Mot. Quash Ex. 2 at 13-14, ECF No. 102-2). The United States of America, a third party not involved in the underlying claims Donald brings against former Gary police officers and the City of Gary, filed a Motion to Quash the subpoena on April 5, 2019, which it noted should be construed as a *Touhy*[1] response denying the subpoena requests. Donald then filed his Cross-Motion to Compel on April 20, 2019.

---

[1] Pursuant to *United States ex rel. Touhy v. Regan*, 340 U.S. 462 (1951).

Donald's Reply in support of his Cross-Motion to Compel, filed on May 10, 2019, included an exhibit which demonstrated Donald was in communication with the government regarding narrowing the subpoena requests. (Pl.'s Reply Ex. 1, ECF No. 120-1). This exhibit noted that Donald was withdrawing Request 4 of the subpoena, and amending Request 3 to read:

> 3. Any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf relating to or involving evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Gary Police Department personnel and/or the Gary Police Department during the period January 1, 1987 through December 31, 1992 (even if the investigation was opened subsequent to that period), including but not limited to documents relating to: (a) the investigation and prosecution of Cory House, Kenneth Wilson and Derrick Earls; and (b) John Bauswell.

*Id.* at 4.

The Court *sua sponte* gave Donald and the government until May 29, 2019 to provide any supplemental briefing as to Donald's amended subpoena requests and/or to file notice as to whether efforts to resolve the issue had mooted the Motion to Quash and Cross-Motion to Compel. (May 15, 2019 Order, ECF No. 121). On May 29, 2019, the government filed a Sur Reply of the United States of America to Plaintiff's Modified Subpoena, noting that the issue had not been resolved.

**STANDARD OF REVIEW**

Donald and the government disagree as to the standard under which the Court should review the denial of the subpoena requests. The government asserts that SAC Mendenhall is an employee of the Department of Justice (DOJ) through his employment with the FBI and therefore the DOJ's *Touhy* regulations control his ability to respond to the subpoena. (Mem. Supp. Mot. Quash 5, ECF No. 93). The government argues that, per *Touhy*, the denial of the subpoena requests is an agency decision reviewable under the Administrative Procedure Act (APA) and, as such, the Court may not reverse the decision unless it was arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law. *Id.* at 20-21 (citing *Edwards v. U.S. Dept. of Justice*, 43 F.3d 312, 314 (7th Cir. 1994) (citing 5 U.S.C. § 706(2)(A))).

Donald, in turn, argues that this is not an administrative matter reviewable under the APA, but rather that compliance with the subpoena is governed by the Federal Rules of Civil Procedure. (Pl.'s Mem. Opp'n Mot. Quash 1, 5-8, ECF No. 102). Donald asserts that the Court should evaluate the denial under Rules 45 and 26, which govern subpoenas and the scope of discovery. *Id.*

As noted in the relevant filings, and further confirmed by the Court's research, there is a circuit split regarding whether courts should look to the APA or Federal Rules of Civil Procedure when reviewing a federal agency's decision not to comply with a non-party subpoena. Complicating matters further, there is disagreement among the district courts in this circuit as to whether the Seventh Circuit Court of Appeals has settled the issue. The government points to *Edwards*, in which the court evaluated the DOJ's response to a non-party subpoena under the APA. (Mem. Supp. Mot. Quash 9, ECF No. 93 (citing 43 F.3d at 316-17)). Donald counters with *FDIC v. Crowe Horwath LLP*, in which a district court within the Seventh Circuit held that the Federal Rules of Civil Procedure, rather than the APA, govern when a litigant seeks to obtain documents from a non-party federal government agency. (Pl.'s Mem. Opp'n Mot. Quash 6-8, ECF No. 102 (citing No. 17 CV 04384, 2018 WL 3105987, at *4 (N.D. Ill. June 25, 2018))). The district court noted that *Edwards* was distinguishable in a critical way from the case before it:

> [T]he case [in *Edwards*] originated in state court, and the litigant sought Department of Justice records pursuant to a state-court issued subpoena, which the Department resisted pursuant to an agency regulation. *Edwards*, 43 F.3d at 314. When the litigant moved to compel a response to the subpoena, the Justice Department removed the case to federal court under 28 U.S.C. § 1442, so the federal district court's jurisdiction over enforcing the subpoena was derivative of the state court's jurisdiction. *Id.* The Seventh Circuit held that the Department had not waived its sovereign immunity in state court, so the district court lacked "jurisdiction to compel the delivery of the [requested information] once the regulatory authority had denied the request." *Id.* at 317. Because the district court

was barred from directly enforcing the subpoena, the Seventh Circuit held that the proper course was to recast the state court litigant's motion to compel as an administrative request under the APA, which meant that the APA's "arbitrary and capricious" standard applied to the agency's decision to withhold the records. *Id.* at 314-15.

But the case at hand was originally filed in federal court, not state court, and Crowe sought documents from the FDIC-C pursuant to a federal subpoena under Rule 45. This Court has original jurisdiction over this case pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331, rather than derivative jurisdiction under 28 U.S.C. § 1442. So the holding in *Edwards* does not apply.

*Crowe Horwath LLP*, 2018 WL 3105987, at *4. The instant matter is distinguishable from *Edwards* for the same reason. Nonetheless, the court in *Crowe Horwath LLP* noted that several other courts in its district held differently, and that these courts found that, "under *Edwards*, district courts should review discovery requests to non-party federal agencies under the APA standard of review even when the case originated in federal court." *Id.* at *5 n.8. A review of the applicable case law has convinced the Court that the matter is not fully settled in this circuit. Nonetheless, the Court need not decide whether the instant issue is governed by the APA or Federal Rules of Civil Procedure, because the outcome under both standards is the same. Before the Court addresses the standards under both the APA and the Federal Rules of Civil Procedure, however, further background is needed to accurately frame the parties' dispute.

### THE SUBPOENA AT ISSUE

Not only is the law unsettled, but the parties also disagree as to whether this Court should review Donald's subpoena as it was served upon the government and reviewed under the applicable *Touhy* regulations or as he modified it after the arguments in this case were developed through the government's Motion to Quash, Donald's Cross-Motion to Compel, and the government's response to the Cross-Motion to Compel. Donald argues that the government objected solely to subpoena Request 4, and now that the request has been withdrawn the

government's objections to the subpoena are moot. (Pl.'s Reply 3, ECF No. 120). The government

responds that it is unsure how Donald "can modify the subpoena and 'moot' the FBI's decision to

decline production of documents unrelated to [his] prosecution under [*Touhy*]." (Sur Reply U.S.

3-4, ECF No. 124). The government notes that:

> The subpoena [even absent Request 4] is not limited to documents relating to co-
> defendants Outlaw and Jelks or the Donald prosecution. It is not limited to police
> officers of GPD, but all personnel. The scope of Request No. 3 continues to be
> expansive. Plaintiff seeks any document relating to any investigation by the FBI or
> persons acting on its behalf relating to or acting on evidence or suspicion of actual
> or potential criminal conduct or civil rights violations committed or engaged in by
> GPD personnel or the GPD for the five-year period. The subpoena requests
> documents relating to suspicions. Once again, if a person from GPD was suspected
> but not charged, plaintiff seeks the documents. If a GPD officer was acquitted of a
> crime, the subpoena seeks the documents. If an officer was the subject to a call to
> the FBI relating some fanciful claim of wrongdoing, Request No. 3 demands the
> documents.

*Id.* at 4.

The government further argues that Donald's modification of the subpoena was improper.

Specifically, the government notes that Federal Rule of Civil Procedure 45(d)(3) identifies only

three circumstances in which a Rule 45 subpoena may be modified, all of which require court

intervention. *Id.* at 6. Rather than follow Rule 45, however, the government contends that Donald

unilaterally modified the subpoena after briefing. *Id.* The government also takes issue with

Donald's assertion that modifications were made in accordance with Rule 37 and Local Rule 37-1,

since it is not a party to the underlying litigation. *Id.* at 7 (citing Pl.'s Reply Ex. 1, ECF No. 120-1).

To the extent that Donald's modified subpoena is a new subpoena, the government claims it is

deficient as to form and service, that it does not comply with the *Touhy* regulations, and that it

improperly asks for production outside the 100-mile limit under Rule 45(c)(2)(A). *Id.* at 9-10.

Finally, the government represents that after a review of Rule 45 and the scope of the modified

subpoena, the FBI still believes the requests to be overbroad, not proportional, seeking irrelevant and/or privileged materials, and requiring a burdensome search. *Id.* at 10.

Donald takes the position that "to the extent any burden is created by the scope of the [s]ubpoena's requests, fault lies with the government," since Donald "represented to both the Court and the government that [he] is willing to work with the government to narrow the requests." (Pl.'s Mem. Opp'n Mot. Quash 13, ECF No. 102). As indicated above, one cannot question the gravity of the underlying claims Donald brings. However, this is but one factor the Court looks to in determining the reasonableness of discovery requests. It cannot be used to escape the obligation of a party seeking discovery to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Fed. R. Civ. P. 45(d)(1).

Nor does the undeniably serious nature of Donald's claims justify the modification of a subpoena request, properly before the Court on a motion to compel, in a reply brief. The Court takes no position on whether the modified subpoena, if properly served, would be enforceable. To allow such a modification at this juncture would deprive the government of meaningful judicial review of a matter before the Court. Both parties brought the government's decision not to comply with the original subpoena before the Court, the government through a Motion to Quash and Donald through a Motion to Compel.

While Donald, in his Motion to Compel, mentioned a general willingness to work with the government to narrow the requests, he nonetheless sought to compel compliance with the entire subpoena and did not specifically mention any possible modifications. Despite Donald's claims that he was willing to negotiate away the truly disputed terms of the subpoena, he was on notice as early as January of this year that the government objected to a request at least similar to the one contained in Request 4. (Pl.'s Mem. Opp'n Mot. Quash Ex. 4 at 2-3, ECF No. 102-4 (email from

government's counsel to Donald's counsel stating, "Likewise paragraph 4 is overbroad and it is difficult to see how every investigation that the FBI may have undertaken where GPD was involved is relevant to this civil rights case")). Donald points to no evidence that he withdrew this request prior to immediately before filing his Reply. And, the request was important enough to Donald that he specifically mentioned it in his Cross-Motion to Compel, where he stressed "[t]he [s]ubpoena's rider makes clear that it seeks information regarding 'actual or potential criminal conduct or civil rights violations committed or engaged in by Gary Police Department personnel and/or the Gary Police Department.'" (Pl.'s Mem. Opp'n Mot. Quash 10, ECF No. 102 (citing Pl.'s Mem. Opp'n Mot. Quash Ex. 2 at 6-14, ECF No. 102-2)).

With these facts, the Court will not simply parse the subpoena and enforce the production of some smaller subset of information than that which the entire subpoena seeks. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); *Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008) ("Moreover, the district court was well within its discretion to quash the subpoena as unduly burdensome."); *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) ("The district court's decision to quash the subpoena and to allow CIGNA to start anew on a clean slate instead of itself modifying the subpoena was within the court's sound discretion."). The dispute before the Court is whether Donald's subpoena, as served, meets the requirements of Rules 45 and 26 of the Federal Rules of Civil Procedure (under Donald's interpretation of the law) or the APA (under the government's interpretation of the law).

Because this subpoena's breadth determines the outcome under either standard, the Court will not enforce this subpoena. The Court will address the legal standards and the arguments of the parties in more detail below. However, it is important to note at the outset that Donald filed this lawsuit after spending more than two decades in prison on murder and robbery convictions

that were vacated in 2016. Donald's Complaint tied his conviction to the misconduct of sworn police officers. Donald's claims are serious and justify placing a burden on parties and non-parties alike through valid—and balanced—discovery requests. The incredibly serious nature of Donald's claims weighs heavily in his favor under either of the legal standards proposed by the parties to this discovery dispute.

If the government had simply ignored Donald's request, taken the position that searching its vast holdings at all was too burdensome, or even argued that only a very small set of potential documents would meet the legal standards that may require production, the Court could easily find that Donald was entitled to relief. Yet, those are not the facts or arguments before the Court. The government did search its holdings. It appeared willing to turn over any documents it had related to Donald's prosecution, yet found none. (Resp. Pl.'s Cross-Mot. Compel 3, ECF No. 114). Perhaps it would have even provided documents in response to a narrower request concerning investigations into the defendant officers, or investigations into a subset of more specified and relevant criminal activity.[2] As it stands, Donald drafted a much broader subpoena.

As the government points out, the subpoena at issue would call for information on investigations that began well after the events that gave rise to Donald's cause of action. *Id.* at 10-11. It would call for documents discussing any GPD employee, not just sworn officers, and for any violation of law, even if it was simply a speeding ticket revealed in a background check. *Id.* In an effort to gauge the burden this would entail, the government ran a search and found more than 28,000 references to the term "Gary Police Department," and a further 540,000 references when quotation marks were not used in the search. *Id.* at 11. Compliance with the subpoena would

---

[2] While this is not the issue before the Court, such an outcome is not mere speculation. The government did stress in briefing that "[t]he subpoena is not limited to documents relating to co-defendants Outlaw and Jelks or the Donald prosecution." (Sur Reply U.S. 4, ECF No. 124).

require FBI employees to review these documents further to determine their responsiveness and the application of any potential privilege.

## THE ARGUMENTS

Though Donald and the government disagree as to whether the APA or the Federal Rules of Civil Procedure govern this matter, they indicate that their arguments are relevant to the Court's evaluation under either standard of review. (Pl.'s Mem. Opp'n Mot. Quash 21, ECF No. 102; Resp. Pl.'s Cross-Mot. Compel 24, ECF No. 114). Since many of the factors are relevant to a determination under both the Federal Rules of Civil Procedure and the APA, the Court will first summarize the parties' arguments regarding those factors.

### A.    Subpoena Breadth, Proportionality, and Burden

The government argues that the subpoena is overbroad, not proportional, and unduly burdensome. The government states that the subpoena seeks a substantial amount of records, many of which are not digital, and that this would require FBI employees to "spend hundreds of hours searching for, identifying, collecting, and reviewing documents to respond to the requests instead of advancing the FBI's vital criminal law enforcement activities." (Mem. Supp. Mot. Quash 10, 11, ECF No. 93). Further, the burden of reviewing these documents would be borne by only two attorneys and one paralegal, who would necessarily be pulled from their other duties—including providing legal training to agents, handling litigation involving the FBI, reviewing Title III matters, and advising agents on legal issues. *Id.* at 18-19.

Donald asserts that the requested documents are proportional to the needs of the case. Donald notes that the issues at stake are of critical importance: "[d]ue to Defendants' alleged egregious misconduct, Plaintiff had his liberty torn away from him for over two decades." (Pl.'s Mem. Opp'n Mot. Quash 10, ECF No. 102). Donald also contends that millions of dollars are in

controversy. *Id.* at 11. Moreover, Donald argues that the FBI has exclusive access to the information sought, as not only does the subpoena request documents "in the exclusive custody of the FBI," but the "City of Gary's claim that numerous relevant documents were destroyed in a fire has further limited Plaintiff's access to documents." *Id.* Donald further points to the government's vast resources, far outweighing his own, and argues that the requested documents are critical to his ability to prove his claims. *Id.* at 12. Donald asserts that the likely benefit the requested documents may help him obtain—"justice for his decades'-long wrongful incarceration"—far outweighs any burden or expense imposed on the government. *Id.*

Donald also notes that the government has provided no details about the "28,000 references" other than that they allegedly relate to the Gary Police Department. *Id.* at 13. Donald argues that

> the government has not provided an affidavit or declaration: (a) describing the documents; (b) attesting to whether some of the alleged documents could easily be eliminated; or (c) attesting to whether the references relate to investigations within the scope of the Subpoena requests or something else, such as joint efforts between the FBI and the police department.

*Id.* To that end, Donald asserts that the mere fact that the government would need to review many documents to comply with the subpoena does not amount to an undue burden. *Id.* (citing *Crowe Horwath LLP*, 2018 WL 3105987, at *9 ("Simply because the FDIC-R obtained a plethora of documents during its investigation does not relieve it of its obligation to produce relevant documents in the course of litigation.")).

The government responds that determining whether any of the vast number of potentially responsive documents identified by keyword are in fact called for under the subpoena would constitute a gargantuan effort. As explained by the government, a serial or 1A file may contain any number of pages. (Resp. Pl.'s Cross-Mot. Compel 12, ECF No. 114; Resp. Pl.'s Cross-Mot. Compel Ex. 1 ¶¶ 6, 12, ECF No. 114-1). The government argues that determining whether any of

these files are relevant and/or privileged would require FBI personnel "to go page by page through the paper files and reference to reference on the database," which would "impose a substantial burden on the FBI diverting its personnel from their important law enforcement duties." (Resp. Pl.'s Cross-Mot. Compel 12-13, ECF No. 114). The government also notes the lack of a temporal limitation in subpoena Request 4, and offers several examples of investigations into the Gary Police Department or its officers that would be wholly irrelevant to Donald and yet would nonetheless be captured by the subpoena requests. *Id.* at 10-11. The Court cannot see how the government could comply with the subpoena as written without reviewing this material. And, a good deal of the material called for under the subpoena is of little use to Donald.

### B. Potentially Cumulative and Duplicative Nature of Subpoena Requests and Availability from Other Sources

The government argues that the subpoena requests are unreasonably cumulative, duplicative, and/or available from other sources. The government asserts that the information sought by Donald is available in the form of sworn testimony by Officer John Bauswell,[3] court records from other cases against the Gary Police Department and its officers, and the Gary Police Department's own files. (Mem. Supp. Mot. Quash 11-12, ECF No. 93).

Donald counters that, contrary to the government's contentions, he does not have the testimony of Officer Bauswell in his possession. (Pl.'s Mem. Opp'n Mot. Quash 19, ECF No. 102). However, Donald does not detail what, if any, steps he has taken to obtain that sworn testimony. Donald also argues that court records "will not include witness interviews or other details of the underlying investigations." *Id.* Further, Donald asserts that the government's contention that the best source of information regarding alleged corruption by the Gary Police Department is the

---

[3] In his Cross-Motion to Compel, Donald explains that Officer Bauswell was an FBI cooperator who testified at the public corruption trial of three Gary Police Department officers in 1992. (Pl.'s Mem. Opp'n Mot. Quash 3-4, ECF No. 102). Donald further states that Officer Bauswell's testimony implicated Defendants Outlaw and Jelks. *Id.*

department's own files "lacks credulity," in that "[a]ny claim by the FBI that the Gary Police Department keeps files on its own corrupt acts would be absurd." *Id.* at 19-20.

Additionally, Donald explains that "the City of Gary informed [him] that numerous documents relevant to his claims were destroyed in a fire," and thus Donald's "ability to obtain documents relevant to his claims has been hindered." *Id.* at 4. Donald maintains that because the subpoena requests documents in the exclusive custody of the FBI, and due to the records lost in the fire, the FBI alone has access to the information sought. *Id.* at 11.

The government contends that Donald can question deponents about official policies, governmental practices, and customs of the Gary Police Department. (Resp. Pl.'s Cross-Mot. Compel 21-22, ECF No. 114). The government further argues that Donald can subpoena the Gary Police Department for its policies and interview its officers about official policies or customs in effect at the time of Donald's prosecution. *Id.* at 22. The government acknowledges Donald's statement regarding the fire that destroyed Gary Police Department records, but states that the fire "did not destroy any knowledge of the policies or customs known to the deponents." *Id.* at 23.

Donald asserts that the government's suggestion he could ask witnesses, including Gary police officers, about past misconduct ignores that such witnesses are unlikely to admit wrongdoing. (Pl.'s Reply 12, ECF No. 120). To that point, Donald notes that the Complaint itself alleges the existence of a "code of silence" within the Gary Police Department regarding disclosure of misconduct. *Id.* In the absence of documents with which to impeach these witnesses, Donald argues that it can be expected that they will not be forthcoming. *Id.*

Donald further asserts that subpoena Request 3 seeks documents directly related to proving the widespread nature of the Gary Police Department's misconduct, and establishing that the conduct that led to Donald's wrongful conviction was not isolated. *Id.* at 13. Donald argues that

he cannot obtain this evidence elsewhere. *Id.* Finally, Donald states that the government's contention that he can question witnesses about policies in effect in the 1980s and 1990s, in lieu of reviewing the documents lost in the fire, "ignores the reality of people's fading memories and advanced age." *Id.*

**C.      Relevance and Admissibility of FBI Documents Unrelated to Donald's Prosecution**

The government argues that the FBI's search of its files revealed no documents related to Donald's prosecution. (Mem. Supp. Mot. Quash 9, ECF No. 93). The government further asserts that the FBI's search of its files yielded no documents related to the actions of the two defendant police officers, or the Gary Police Department, during the investigation that led to Donald's prosecution. *Id.* at 9-10.

In this vein, the government contends that the FBI documents unrelated to Donald's prosecution are irrelevant and inadmissible with regard to the two defendant police officers. *Id.* at 15-16. The government argues that Donald "cannot use any documents relating to other investigations of other bad acts by [the two defendant police officers] because other bad acts are inadmissible" under Federal Rule of Evidence 404(b)(1). *Id.* at 16.

Donald asserts that this argument ignores that such documents may be otherwise admissible under Rule 404(b)(2). (Pl.'s Mem. Opp'n Mot. Quash 9, ECF No. 102). Specifically, Donald notes that information about investigations into actual or potential criminal or civil rights violations engaged in or committed by the defendants, even if not directly related to the misconduct alleged in the Complaint, is nonetheless "relevant and admissible under [Rule] 404(b)(2) to show the individual defendants' knowledge of their misconduct, absence of mistake and lack of accident with respect to their conduct in framing Plaintiff." *Id.*

### D.    Relevancy to Donald's *Monell* Claims

The government argues that the requested documents are irrelevant to Donald's *Monell* claims. In *Monell*, the Supreme Court held that "a local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents," but rather "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). In the instant case, the government asserts that because the subpoena seeks documents related to "investigations into just six officers," and that such investigations "will not generate information showing policies or practices," the requested records will not help Donald establish *Monell* claims. (Mem. Supp. Mot. Quash 17-18, ECF No. 93).

In turn, as discussed above, Donald argues that the subpoena's rider "makes clear that it seeks information regarding 'actual or potential criminal conduct or civil rights violations committed or engaged in by Gary Police Department personnel and/or the Gary Police Department.'" (Pl.'s Mem. Opp'n Mot. Quash 10, ECF No. 102 (citing Pl.'s Mem. Opp'n Mot. Quash Ex. 2 at 6-14, ECF No. 102-2)). Donald further argues that "information regarding criminal or civil rights investigations of Gary Police Department personnel," "widespread corruption in the Gary Police department, *de facto* policies and practices of allowing officers to engage in misconduct with impunity[,] or the overall failure to train Gary Police Department officers," is relevant to his *Monell* allegations. *Id.* at 9-10. Donald further asserts that subpoena Request 3 seeks documents directly related to proving the widespread nature of the Gary Police Department's misconduct and establishing that the conduct that led to Donald's wrongful conviction was not isolated. (Pl.'s Reply 13, ECF No. 120). Donald argues that he cannot obtain this evidence elsewhere. *Id.*

To this argument, the government raises many of the same issues as above, including the availability of the information through depositions. (Resp. Pl.'s Cross-Mot. Compel 21-22, ECF No. 114). The government acknowledges concerns caused by a fire that destroyed Gary Police Department records, but states that the fire "did not destroy any knowledge of the policies or customs known to the deponents." *Id.* at 23. Donald asserts that the government's suggestion that he could ask witnesses, including Gary police officers, about past misconduct ignores that such witnesses are unlikely to admit wrongdoing, and points to the very "code of silence" alleged in his Complaint. (Pl.'s Reply 12, ECF No. 120).

### E.    Law Enforcement Privilege

Both sides present arguments regarding the law enforcement privilege. The existence of a privilege is certainly an issue the Court must consider, but since the breadth of the subpoena drives the outcome of this matter, the parties' privilege arguments are only tangentially germane and do not determine the outcome of either motion. The government argues that the records sought by the subpoena requests are protected by the law enforcement privilege, noting that all of the documents "relate to the FBI's execution of its law enforcement role and are records compiled for law enforcement purposes." (Mem. Supp. Mot. Quash 13-15, ECF No. 93). Donald argues that the government waived its privilege and, in any event, that the privilege is a qualified one and should not apply in this case. (Pl.'s Mem. Opp'n Mot. Quash 13-16, ECF No. 102).

### F.    Government's Review of Requested Documents

Donald asserts that the government represented that it has not reviewed all the documents that are potentially responsive to the subpoena. (Pl.'s Reply 3, ECF No. 120). Donald explains that this is despite the government's previous representation that it could not object to the subpoena without first completing that review. *Id.* at 3-4 (citing Mot. Extension Time, ECF No. 83; Second

Mot. Extension Time, ECF No. 88). Donald argues that, based on these previous representations, because the government has not reviewed the documents, "its objections are improper and speculative, and its decision not to comply with the [s]ubpoena is arbitrary." *Id.* at 4.

The government counters that Donald has mischaracterized its representations. Specifically, the government explains that the pages cited by Donald as containing the government's representation that the documents had not been reviewed contain no such language, but rather state that "a review of all [the] files . . . would be required" to determine whether they contain relevant or privileged information. (Sur Reply U.S. 8, ECF No. 124 (citing Resp. Pl.'s Cross-Mot. Compel 12-13, ECF No. 114)). The government argues that this merely served to explain "that reviewing all the files requested by [P]laintiff would impose a serious burden on the FBI," and that it makes no comment as to whether the files have been reviewed. *Id.* According to the government, this language served to provide "one of the reasons the decision not to produce was not arbitrary and capricious." *Id.*

Finally, the government states that it "did review its files and determined there were no documents related to the Donald prosecution." *Id.* at 9. Nonetheless, the government contends that it was not required to even conduct a search for documents related to the subpoena while there is a pending motion to quash. *Id.* The government cites to *Penwalt v. Durand-Wayland, Inc.*, in which the Ninth Circuit Court of Appeals stated a party was not obligated to search for or produce subpoenaed documents where there was a pending motion to quash until the party that served the subpoena obtained an order directing compliance. *Id.* (citing 708 F.2d 492, 494 (9th Cir. 1983)). The government asserts that any arguments regarding the level of review conducted by the FBI are undercut by the holding in *Penwalt* and by Federal Rule of Civil Procedure 45's requirement that the issuer of a subpoena ensure the subpoena is reasonable. *Id.*

# ANALYSIS

## A.     Analysis Under the Federal Rules of Civil Procedure

Pursuant to Federal Rule of Civil Procedure 45(a)(1)(A)(iii), a party may serve a subpoena commanding a non-party to testify at a deposition and produce designated documents. Rule 45(d)(3)(A)(iv) requires a court to quash or modify a subpoena based on a timely motion if the subpoena subjects a person to an undue burden. Factors considered in determining whether a subpoena is unduly burdensome include non-party status, relevance, the issuing party's need for the discovery, and the breadth of the request. *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015). The party seeking to quash the subpoena bears the burden of proving that it is unduly burdensome. *Malibu Media, LLC v. John Does 1-14*, 287 F.R.D. 513, 516 (N.D. Ind. 2012).

The broad scope of discovery, which applies to discovery requests sent to non-parties as well as parties, permits a party to seek information.

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) (internal citations omitted). When a party seeks discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or is outside of the scope of discovery, the Court must limit discovery. Fed. R. Civ. P. 26(b)(2)(C).

The Seventh Circuit Court of Appeals has stated that "there is a strong public policy in favor of disclosure of relevant materials." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). The Court of Appeals has further instructed that "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Id.* (internal citations omitted).

The government correctly points out that courts are often especially sympathetic to burdens placed upon non-parties. (Resp. Pl.'s Cross-Mot. Compel 13, ECF No. 114). While that is true, and the burden placed upon a non-party with critical law enforcement missions should carry significant weight, the FBI also has an interest in ensuring that all prosecutions—both state and federal—are free from the type of misconduct described in Donald's Complaint.[4] That interest would further justify some burden in complying with a properly narrow subpoena request.

Throughout its filings, the government addresses the considerations enumerated in Rule 26. The government describes in detail the substantial burden that would be imposed and the critical FBI resources that would be consumed by complying with the subpoena requests. The search terms used to find responsive documents returned tens, if not hundreds, of thousands of references. Further, the relevant documents may be covered by the law enforcement privilege, requiring a careful review and the balancing of multiple factors in considering whether to assert a qualified privilege. The FBI located no documents directly related to Donald's prosecution, which would presumably require much less effort to produce.

The Court is not unsympathetic to Donald's counter-arguments on these points. Further, the Court believes that Donald makes several compelling arguments as to the unavailability of

---

[4] The government's brief lists the provision of leadership and criminal justice services to state and local law enforcement as part of the FBI's responsibilities. (Mem. Supp. Mot. Quash 14, ECF No. 93).

certain files from the Gary Police Department in light of records being lost in a fire. While Donald's assertion that certain evidence not directly related to his prosecution may still be relevant and admissible under Rule 404(b)(2) carries some weight, the government compellingly argues that there remains a swath of wholly irrelevant material that would nonetheless be captured by the subpoena requests.

The government met its burden in moving to quash. The discovery sought may well be relevant to Donald's claims, his need for some of it is valid, and his ability to obtain the requested material from other sources is at best undetermined at the present time. But, the government has successfully shown that compliance with the exceptionally broad terms of the subpoena would impose an undue burden on the agency. Compliance with the subpoena cannot be compelled under the Federal Rules of Civil Procedure.

## B.    Analysis Under the Administrative Procedure Act

Pursuant to the APA, a court may not set aside an agency action unless the court determines it to be "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'without observance of procedure required by law.'" *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995) (citing 5 U.S.C. §§ 706(2)(A), 706(2)(D)). When evaluating a decision under the arbitrary and capricious standard, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (internal citation omitted). While "this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* (internal citation omitted). Nonetheless,

> [w]here an 'agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or

is so implausible that it could not be ascribed to a difference in view or the product of agency expertise,' the agency has violated the standards of the APA.

*Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Finally, the party challenging the agency action bears the burden of proof. *Id.* (internal citations omitted).

The Code of Federal Regulations dictates when the DOJ may disclose information through documents or the oral testimony of an employee:

> (b) The responsible official, subject to the terms of paragraph (c) of this section, may authorize the appearance and testimony of a present or former Department employee, or the production of material from Department files if:
>
>> (1) There is no objection after inquiry of the originating component;
>>
>> (2) The demanded disclosure, in the judgment of the responsible official, is appropriate under the factors specified in § 16.26(a) of this part; and
>>
>> (3) None of the factors specified in § 16.26(b) of this part exists with respect to the demanded disclosure.

28 C.F.R. § 16.24(b). Section 16.26 enumerates the relevant factors to be considered:

> (a) In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:
>
>> (1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and
>>
>> (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.
>
> (b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:
>
>> (1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. §§ 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, Fed. R. Crim. P., Rule 6(e),
>>
>> (2) Disclosure would violate a specific regulation;

(3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,

(4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,

(6) Disclosure would improperly reveal trade secrets without the owner's consent.

28 C.F.R. § 16.26(a)-(b). Per § 16.26(a)(1), one factor to consider is whether disclosure is appropriate under the rules of procedure that govern the issue at hand—in this instance, the Federal Rules of Civil Procedure, including the scope of discovery as provided in Rule 26(b) and stated in the previous section of this Opinion. And, both the Federal Rules of Civil Procedure and the *Touhy* regulations require the consideration of any valid privilege.

Because the Code of Federal Regulations points the Court to Rule 26, the Court reincorporates its findings from the previous section as to the parties' arguments. The critical difference is that here the Court must take the extra step of determining whether the FBI's denial of the subpoena requests was arbitrary or capricious, and only compel compliance with the subpoena if the Court answers this question in the affirmative.

As the Court detailed above, the government explains the burden imposed by the subpoena requests, notes the FBI resources that would be consumed by complying with the requests, makes arguments as to Donald's access to the relevant information from other sources, and asserts the privileged nature of the materials sought. While Donald makes compelling points in his favor, the FBI's reasons for denying the subpoena requests—as described in the government's filings—fall far short of being either arbitrary or capricious. Rather, the government has demonstrated that the

FBI considered the necessary factors as laid out in the Code of Federal Regulations and found they obliged the agency to deny the subpoena requests. While certain arguments put forth by the government were stronger than others, the government makes colorable claims regarding burden, privilege, and potential availability from other sources. Donald has not met his burden. Under the APA's arbitrary and capricious standard, the Court cannot compel the FBI to comply with the subpoena.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the United States of America's Motion to Quash Subpoena [DE 92], and **DENIES** Plaintiff's Cross-Motion to Compel Special Agent in Charge Grant Mendenhall to Comply with Plaintiff's Fed. R. Civ. P. 45 Subpoena [DE 101].

The Court **QUASHES** the subpoena issued by Plaintiff Willie T. Donald to FBI SAC Grant Mendenhall.

The Court **ORDERS** that any future motions to compel, motions to quash, or motions concerning a denial under *Touhy* regulations must contain a concise statement (1) of the terms of the subpoena at issue, (2) of any compromise the moving party is willing to make, and (3) that the moving party made a reasonable effort to obtain a statement of the non-moving party as to the same.

So ORDERED this 6th day of August, 2019.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT