# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| WILLIE T. DONALD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-32-TLS-JPK |
| | ) | |
| BRUCE OUTLAW, *et al.*, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Quash Subpoena [DE 185], filed by non-party the United States of America and Plaintiff's Cross-Motion to Compel Special Agent in Charge Grant Mendenhall to Comply with Plaintiff's Fed. R. Civ. P. 45 Subpoena ("Cross-Motion to Compel") [DE 191], filed by Plaintiff Willie T. Donald. For the following reasons, the Motion to Quash is granted and the Cross-Motion to Compel is denied.

## BACKGROUND

Familiarity with this case and the Court's August 6, 2019 Order regarding the previous motion to quash a subpoena issued to the Federal Bureau of Investigation (FBI) is assumed. Nevertheless, the Court will briefly recount the relevant procedural history that brings us to the instant dispute over Donald's most recent subpoena to the FBI. Donald was convicted of robbery and murder following a trial in June 1992. (Compl. ¶ 73, ECF No. 1). His convictions were subsequently overturned on January 25, 2016, and all charges against him were dismissed on January 28, 2016. *Id.* at ¶ 78. On January 24, 2017, Donald filed suit against the two police officers primarily responsible for his conviction and the City of Gary, among other parties. *See generally id.*

In February of 2019, Donald served a subpoena ("Subpoena 1") on FBI Special Agent in Charge (SAC) Grant Mendenhall. (Mem. Supp. Mot. Quash Subpoena 1 at 2, ECF No. 93). On April 5, 2019, the United States of America, a third party not involved in the underlying claims Donald brings against former Gary police officers and the City of Gary, filed a motion to quash, which it noted should be construed as a *Touhy*[1] response denying the subpoena requests. *Id.* at 3-4. On April 20, 2019, Donald filed a cross-motion to compel. (Pl.'s Cross-Mot. Compel Subpoena 1, ECF No. 101).

In their previous motions, Donald and the government disagreed as to the standard under which the Court should review the denial of the requests in Subpoena 1. The government asserted that SAC Mendenhall is an employee of the Department of Justice (DOJ) through his employment with the FBI and therefore the DOJ's *Touhy* regulations control his ability to respond to the subpoena. (Mem. Supp. Mot. Quash Subpoena 1 at 5, ECF No. 93). The government argued that, per *Touhy*, the denial of the subpoena requests was an agency decision reviewable under the Administrative Procedure Act (APA) and, as such, the Court could not reverse the decision unless it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.* at 20-21. Donald, in turn, argued that this was not an administrative matter reviewable under the APA, but rather that compliance with Subpoena 1 was governed by the Federal Rules of Civil Procedure. (Pl.'s Mem. Opp'n Mot. Quash Subpoena 1 at 1, 5-8, ECF No. 102). Donald asserted that the Court should evaluate the denial under Rules 45 and 26, which govern subpoenas and the scope of discovery. *Id.*

---

[1]As explained in more detail below, the government argues that subpoena compliance is limited to a review under the Administrative Procedure Act pursuant to *United States ex rel. Touhy v. Regan*, 340 U.S. 462 (1951) and *Edwards v. U.S. Dept. of Justice*, 43 F.3d 312 (7th Cir. 1994).

A review of the applicable case law convinced the Court that the matter is not fully settled in this circuit. (Aug. 6, 2019 Op. & Order 5, ECF No. 156). Nonetheless, the Court declined to decide whether the issue was governed by the APA or Federal Rules of Civil Procedure, because the Court found that compliance with Subpoena 1 could not be compelled under either standard. *Id.* at 18-23. The Court explained that, had the government simply ignored Donald's request, taken the position that searching its immense holdings at all was too burdensome, or even argued that only a very small set of potential documents would meet the legal standards that may require production, the Court could have easily found that Donald was entitled to relief. *Id.* at 9. But those were not the facts or arguments before the Court. Indeed, the government *did* search its holdings and, though the government appeared willing to turn over any documents it had related to Donald's prosecution, it found none. (Resp. Pl.'s Cross-Mot. Compel Subpoena 1 at 3, ECF No. 114). Moreover, the Court noted that the expansive requests in Subpoena 1 called for information on investigations that began well after the events that gave rise to Donald's cause of action. (Aug. 6, 2019 Op. & Order 9, ECF No. 156 (citing Resp. Pl.'s Cross-Mot. Compel Subpoena 1 at 10-11, ECF No. 114)). The requests called for documents discussing any Gary Police Department employee, not just sworn officers, and for any violation of law, even if it was simply a speeding ticket revealed in a background check. *Id.* (citing Resp. Pl.'s Cross-Mot. Compel Subpoena 1 at 10-11, ECF No. 114). Compliance with Subpoena 1 would have required FBI employees to review a vast number of files, many of which had no bearing on Donald's case, for responsiveness and the application of any potential privilege prior to any production. *Id.* at 9-10. The Court found that the government successfully showed compliance with the exceptionally broad terms of Subpoena 1 would impose an undue burden on the agency, and thus compliance with the subpoena could not be compelled under the Federal Rules of Civil Procedure. *Id.* at 18-20. The Court further found

that the FBI's reasons for denying the subpoena requests—as described in the government's filings—fell far short of being either arbitrary or capricious. *Id.* at 20-23. Accordingly, under the APA's arbitrary and capricious standard, the Court could not compel the FBI to comply with Subpoena 1. *Id.*

Compliance with the subpoena at issue in the instant filings cannot be compelled for the same reasons. In August of 2019, Donald served his second subpoena ("Subpoena 2") on SAC Mendenhall. The parties engaged in ultimately fruitless negotiations regarding modification of the requests in Subpoena 2 and the government subsequently filed the instant motion to quash, followed shortly after by Donald's cross-motion to compel.

Once more, the FBI did not merely ignore Donald's request and declare that any attempt at a search of its files would be unduly burdensome. Rather, the FBI produced over two dozen files seemingly directly related to the information sought by Subpoena 2. Further, the FBI indicated a willingness to produce more material if Donald agreed to narrower subpoena requests. But negotiations between the parties came to a halt, and the issue is now back before this Court. Subpoena 2, like its predecessor, seeks a vast universe of documents. The purported temporal limit in the most expansive request fails to meaningfully alter the breadth of Subpoena 2 given the caveat that documents pertaining to a specific time period are sought regardless of the creation date of the file, and the request again necessarily encompasses records that will have little or no bearing on Donald's case. Subpoena 2, as served, imposes an undue burden on the FBI and compliance with its terms cannot be compelled under the Federal Rules of Civil Procedure. In its filings, the government has also again shown that the FBI's decision not to comply with Subpoena 2 was neither flippant nor poorly reasoned, and it fell far short of reaching the arbitrary and capricious

standard. Compliance with Subpoena 2, therefore, cannot be compelled under the APA's arbitrary and capricious standard.

## SUBPOENA 1

Subpoena 1, as served on SAC Mendenhall, sought production of the following documents:

1. Any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf: (a) relating to or involving allegations, evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Defendant Bruce Outlaw, including but not limited to the investigation that resulted in the prosecution of Cory House, Kenneth Wilson and Derrick Earls; or (b) in which Outlaw was a subject or target of an investigation.

2. Any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf: (a) relating to or involving allegations, evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Defendant John E. Jelks, Jr.; or (b) in which Jelks was a subject or target of an investigation.

3. For the period January 1, 1987 through December 31, 1992, any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf relating to or involving allegations, evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Gary Police Department personnel and/or the Gary Police Department, including but not limited to documents relating to: (a) the investigation and prosecution of Cory House, Kenneth Wilson and Derrick Earls; and (b) John Bauswell.

4. To the extent not covered by Requests 1 through 3, above, any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf relating to or involving evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Gary Police Department personnel and/or the Gary Police Department, including but not limited to any of its officers (whether full-time, part-time or [auxiliary]), employees, contractors, informants and agents.

(Mem. Supp. Mot. Quash Subpoena 1 at 2-3, ECF No. 93; Pl.'s Mem. Opp'n Mot. Quash Subpoena 1 Ex. 2 at 13-14, ECF No. 102-2).

Donald's reply in support of his cross-motion to compel Subpoena 1 notes that he was withdrawing Request 4 of Subpoena 1, the "catch all" provision, and amending Request 3 to read:

3.  Any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf relating to or involving evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Gary Police Department personnel and/or the Gary Police Department during the period January 1, 1987 through December 31, 1992 (even if the investigation was opened subsequent to that period), including but not limited to documents relating to: (a) the investigation and prosecution of Cory House, Kenneth Wilson and Derrick Earls; and (b) John Bauswell.

(Pl.'s Reply Subpoena 1 Ex. 1 at 4, ECF No. 120-1).

The parties disagreed as to whether the Court should review Subpoena 1 as it was served upon SAC Mendenhall and reviewed under the applicable *Touhy* regulations or as Donald modified it after the arguments in this case were developed through the parties' filings on the issue. Donald argued that, since the government objected solely to Subpoena 1 Request 4 and the request was withdrawn, the government's objections to the subpoena were moot. (Pl.'s Reply Subpoena 1 at 3, ECF No. 120). The government responded that it was unsure how Donald could "modify the subpoena and 'moot' the FBI's decision to decline production of documents unrelated to [his] prosecution under [*Touhy*]." (Sur Reply U.S. Subpoena 1 at 3-4, ECF No. 124).

In its August 6, 2019 Order, the Court explained that it would take no position on whether the modified subpoena would be enforceable. (Aug. 6, 2019 Op. & Order 7, ECF No. 156). The Court noted that to allow such a modification at that juncture would deprive the government of meaningful judicial review of a matter before the Court, as both parties brought the government's decision not to comply with the unmodified Subpoena 1 before the Court in their filings. *Id.* On the facts before it, the Court declined to simply parse Subpoena 1 and enforce the production of some smaller subset of information than that which the entire subpoena sought. *Id.* at 8 (citing Fed.

R. Civ. P. 45(d)(3)(A)(iv); *Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008) ("Moreover, the district court was well within its discretion to quash the subpoena as unduly burdensome."); *Tiberi v. CIGNA Ins. Co.,* 40 F.3d 110, 112 (5th Cir. 1994) ("The district court's decision to quash the subpoena and to allow CIGNA to start anew on a clean slate instead of itself modifying the subpoena was within the court's sound discretion.")). The dispute before the Court was whether Donald's subpoena, as served, met the requirements of Rules 45 and 26 of the Federal Rules of Civil Procedure (under Donald's interpretation of the law) or the APA (under the government's interpretation of the law). The Court therefore evaluated the motion to quash and the cross-motion to compel as they applied to the unmodified Subpoena 1, ultimately granting the former and denying the latter. In doing so, the Court emphasized the breadth of Subpoena 1, noting that "[i]t would call for documents discussing any GPD employee, not just sworn officers, and for any violation of law, even if it was simply a speeding ticket revealed in a background check." (Aug. 6, 2019 Op. & Order 9, ECF No. 156).

## SUBPOENA 2

Subpoena 2, as served on SAC Mendenhall, seeks production of the following documents:

1. Any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf: (a) relating to or involving allegations, evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Defendant Bruce Outlaw, including but not limited to the investigation that resulted in the state and/or federal prosecutions of Cory House, Kenneth Wilson, Derrick Earls, John E. Jelks, Jr., William Fazekas, Thomas Jordan, and/or Thomas Papadakis; or (b) in which Outlaw was a subject or target of an investigation.

2. Any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf: (a) relating to or involving allegations, evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Defendant John E. Jelks, Jr., including but not limited to the investigation that resulted in the state and/or federal prosecutions of Cory House,

Kenneth Wilson, Derrick Earls, John E. Jelks, Jr., William Fazekas, Thomas Jordan, and/or Thomas Papadakis; or (b) in which Jelks was a subject or target of an investigation.

3. Any and all Documents relating to any investigation undertaken by the FBI or any of its counsel, consultants, employees, representatives, agents, contractors, or persons acting on its behalf relating to or involving evidence or suspicion of actual or potential criminal conduct or civil rights violations committed or engaged in by Gary Police Department personnel and/or the Gary Police Department during the period January 1, 1987 through December 31, 1992 (even if the investigation was opened subsequent to that period), including but not limited to documents relating to: (a) the state or federal investigations and prosecutions of Cory House, Kenneth Wilson, Derrick Earls, John E. Jelks, Jr., William Fazekas, Thomas Jordan, and/or Thomas Papadakis; and (b) John Bauswell.

(Mem. Supp. Mot. Quash Subpoena 2 at 2-3, ECF No. 186).

The government represents that, after Subpoena 2 was served, the FBI produced to Donald twenty-nine 302s from its files.[2] *Id.* at 5. The government explains that these files included statements that Defendant Jelks, Bauswell, Fazekas, and Papadakis made to the FBI regarding their actions as officers of the Gary Police Department. *Id.* at 5-6. These files further contained information regarding items stolen by police officers and physical assaults committed during raids. *Id.* at 6. After this production, Donald repeated his request for the documents identified in Subpoena 2 and the parties engaged in further negotiations. *Id.* at 7.

On October 7, 2019, Donald emailed the government a proposed modified subpoena. *Id.* This modified subpoena amended Requests 1 and 2 to specify that the requests pertained to actions committed by Defendants Outlaw and Jelks in their capacities as Gary Police Department officers. (Mem. Supp. Mot. Quash Subpoena 2 Ex. 4 at 3, ECF No. 186-4). The modified subpoena further amended Request 3 of Subpoena 2 to read:

FD-302 reports relating to or involving allegations of or investigation into the following forms of misconduct by the Gary Police Department or any Gary Police Department officer during the period January 1, 1987 through December 31, 1992

---

[2] An FD-302 is an internal FBI form that memorializes FBI interviews. *Higgs v. United States Park Police*, 933 F.3d 897, 901 (7th Cir. 2019).

(even if the investigation was opened subsequent to that period): (a) fabrication, destruction or suppression of evidence; (b) failure to disclose evidence to defense attorneys or prosecutors; (c) preparation or submission of false or fabricated police reports; (d) intimidation of witnesses, tampering with witnesses or other obstructive efforts; (e) use of suggestive identification procedures or other improper identification procedures; and (f) unlawful searches and seizures.

*Id.* at 3-4. The government believed this modified request to be more reasonable and appropriate than Donald's previous request for all investigations into the Gary Police Department and Defendants Outlaw and Jelks from 1987 through 1992. (Mem. Supp. Mot. Quash Subpoena 2 at 8, ECF No. 186). As a counterproposal, the FBI offered to produce any 302s relating to civil rights violations of the nature listed in items (a) to (e) in the modified Request 3 committed by Defendants Outlaw and Jelks. *Id.* The FBI further offered to search its files and produce, for files opened prior to January 1, 1995, redacted 302s that related to the acts listed in items (a) to (e) in the modified Request 3 committed by other Gary Police Department officers. *Id.* Donald requested that the government reconsider its position and produce a broader range of documents. *Id.* at 9. The discussions that followed between Donald and the government did not result in agreement, though Donald maintains that he stands by his offer to amend Request 3 to the language above, with the exception that he is further willing to forego obtaining the information requested in item (f). (Mem. Supp. Mot. Quash Subpoena 2 at 9-10, ECF No. 186; Pl.'s Mem. Opp'n Mot. Quash Subpoena 2 at 10, ECF No. 193). Nonetheless, the parties limited their substantive arguments to Subpoena 2 as served, prior to discussion of modification.

## STRIKINGLY SIMILAR ISSUES

Below, the Court will analyze the issues presented and consider Subpoena 2, as it was served on the FBI. Neither party has asked the Court to reach the issue of whether its decision to quash Subpoena 2 is with prejudice as to any future subpoenas. While this issue is reserved for another day, no future motion to compel will be considered without first permitting the government

the opportunity to argue that today's decision should be with prejudice as to any future efforts to compel compliance with a similar subpoena. Further, the government is free to seek a ruling on that issue prior to proceeding to any briefing on the merits, should the government seek to quash any future subpoena from Donald. In other words, the first step in any future motion practice related to third-party subpoenas from Donald to the government will be a determination of whether Donald should be permitted yet another chance to craft a properly drawn subpoena.

Mark Twain is credited with recognizing "that history does not repeat itself, but it often rhymes." The instant issue is more repetition than rhyme. Though the requests in Subpoena 2 are contained in one fewer paragraph than the requests in Subpoena 1, the scope of Subpoena 2 carries much the same burden due to the inclusion of a comparable "catch all" provision to the one contained in Subpoena 1.[3] Though Donald argues that Subpoena 2 does *not* contain such a catch all provision, the reality is that, as discussed further below, the relevant request contains a caveat which renders its supposed temporal limitation of minimal value. And perhaps even more importantly, it still seeks information related to any criminal investigation of any Gary Police Department personnel, even if the conduct of the investigation has little bearing on Donald's claims. Nothing has changed that would alter the Court's previous determination that, "[b]ecause [the] subpoena's breadth determines the outcome under either [the Federal Rules of Civil Procedure or the APA]," compliance with the subpoena cannot be enforced. (Aug. 6, 2019 Op. & Order 8, ECF No. 156). As the Court previously explained:

> Donald drafted a much broader subpoena. As the government points out, the subpoena at issue would call for information on investigations that began well after the events that gave rise to Donald's cause of action. It would call for documents discussing any GPD employee, not just sworn officers, and for any violation of law, even if it was simply a speeding ticket revealed in a background check.

---

[3] Donald himself seems to concede that Subpoena 1 contained such a catch all provision. (Pl.'s Mem. Opp'n Mot. Quash Subpoena 2 at 3, ECF No. 193).

*Id.* at 9 (internal citations omitted).

Pursuant to Rule 45, Donald has an obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Fed. R. Civ. P. 45(d)(1). Moreover, when making the determination of whether a subpoena imposes an undue burden, the Court specifically considers whether the served individual or agency is a non-party. *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015). As explained by one court,

> the rationale for the undoubted solicitude accorded non-parties is that, although discovery is by definition invasive, parties to a [lawsuit] must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs.

*Id.* Yet, even with this Court's prior ruling, Donald's subpoena does not abide by the mandate of Rule 45.

The Court's previous order required that any future motions of the kind at issue here must contain a statement of the terms of the subpoena at issue and any compromise the moving party was willing to make, to encourage the parties to meaningfully meet and confer. (Aug. 6, 2019 Op. & Order 23, ECF No. 156). The government recounts the Court's previous note that the FBI "has an interest in ensuring that all prosecutions—both state and federal—are free from the type of misconduct described in Donald's Complaint." (Mem. Supp. Mot. Quash Subpoena 2 at 5, ECF No. 186 (quoting Aug. 6, 2019 Op. & Order 19, ECF No. 156)). The government appeared to take this responsibility seriously. In its briefs on Subpoena 1, the government explained that the FBI searched its files and found neither documents related to Donald's prosecution nor documents related to the actions of the two defendant police officers or the Gary Police Department during the investigation that led to Donald's prosecution. (Mem. Supp. Mot. Quash Subpoena 1 at 9-10,

11

ECF No. 93; Resp. Pl.'s Cross-Mot. Compel Subpoena 1 at 3, ECF No. 114). As will be discussed further below, the FBI produced numerous files to Donald in the lead up to the issuance of Subpoena 2 and the instant motions. (Mem. Supp. Mot. Quash Subpoena 2 at 5-6, ECF No. 186).

Donald has once again served an overly broad subpoena. Though he argues that Subpoena 2 is narrowly tailored, he fails to justify the broad nature of the subpoena in his briefs. Moreover, Donald was certainly on notice that this Court would consider whether to simply reject the Subpoena as overbroad without enforcing some narrower subset of presumably permissible third party discovery requests.

### STANDARD OF REVIEW

The parties once again disagree as to the standard under which the Court should review the denial of the subpoena requests. The government argues that the denial of the subpoena requests is an agency decision reviewable under the APA and, as such, the Court may not reverse the decision unless it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. (Mem. Supp. Mot. Quash Subpoena 2 at 17-18, ECF No. 186). Donald, in turn, argues that compliance with the subpoena is governed by the Federal Rules of Civil Procedure, and thus asserts that the Court should evaluate the denial under Rules 45 and 26, which govern subpoenas and the scope of discovery. (Pl.'s Mem. Opp'n Mot. Quash Subpoena 2 at 12-13, ECF No. 193). Nonetheless, the parties assert that the Court should grant their respective motions under either standard. (Mem. Supp. Mot. Quash Subpoena 2 at 14, ECF No. 186; Pl.'s Mem. Opp'n Mot. Quash Subpoena 2 at 25, ECF No. 193).

There remains a circuit split regarding whether courts should look to the APA or Federal Rules of Civil Procedure when reviewing a federal agency's decision not to comply with a non-party subpoena, which the Court reviewed in its previous order. (Aug. 6, 2019 Op. & Order 3-5,

ECF No. 156). As before, the Court need not decide whether the instant issue is governed by the APA or Federal Rules of Civil Procedure, because the outcome under both standards is the same.

## ANALYSIS

### A.    Analysis Under the Federal Rules of Civil Procedure

Pursuant to Federal Rule of Civil Procedure 45(a)(1)(A)(iii), a party may serve a subpoena commanding a non-party to testify at a deposition and produce designated documents. The party responsible for issuing and serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45(d)(3)(A)(iv) further requires a court to quash or modify a subpoena based on a timely motion if the subpoena subjects a person to an undue burden. Factors considered in determining whether a subpoena is unduly burdensome include non-party status, relevance, the issuing party's need for the discovery, and the breadth of the request. *Uppal*, 124 F. Supp. 3d at 813. The party seeking to quash the subpoena bears the burden of proving that it is unduly burdensome. *Malibu Media, LLC v. John Does 1-14*, 287 F.R.D. 513, 516 (N.D. Ind. 2012).

The broad scope of discovery, which applies to discovery requests sent to non-parties as well as parties, permits a party to seek information

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The limits and breadth of discovery expressed in Rule 26 are applicable to non-party discovery under Rule 45." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) (internal citations omitted). When a party seeks discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more

convenient, less burdensome, or less expensive" or is outside of the scope of discovery, the Court must limit discovery. Fed. R. Civ. P. 26(b)(2)(C).

The Seventh Circuit Court of Appeals has stated that "there is a strong public policy in favor of disclosure of relevant materials." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). The Court of Appeals has further instructed that "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Id.* (internal citations omitted).

The government argues that Subpoena 2 should be quashed as unduly burdensome. The government explains that there is no meaningful difference between Subpoena 2 and its predecessor, which the Court found unduly burdensome, due to the inclusion of a caveat on the temporal limit in Request 3. (Mem. Supp. Mot. Quash Subpoena 2 at 18-19, ECF No. 186). Request 3 seeks documents related to certain investigations concerning conduct committed during the period of 1987 to 1992. *Id.* at 18. However, Request 3 also seeks these same documents even if the investigation itself was opened subsequent to 1992. *Id.* This temporal limitation does go to whether the materials are relevant, but it does little to limit the burden of compliance. The government contends that complying with this request would require the FBI to conduct a substantially similar review to that required by Subpoena 1, due to the need to determine if there are references in *any* files to acts occurring between 1987 and 1992. *Id.* at 19.

The government explains that, during its initial search of files for Subpoena 1, the FBI found that its database contains more than 28,000 references to the Gary Police Department. *Id.* This search further revealed over 7,000 serials, which may contain any number of pages, and 493 IA files. *Id.* The government states that few of these documents would be eliminated by

14

Request 3 in Subpoena 2, as it requires the FBI to search for acts that occurred from 1987 to 1992 but were disclosed later in time. *Id.* Finally, the government asserts that the requests in Subpoena 2 seek documents regardless of relevance, that the requests are cumulative and duplicative of other documents Donald should already possess, and that the requests seek records that are protected by the law enforcement privilege. *Id.* at 20-23.

Donald argues that the requested documents are relevant and that the government has offered no serious challenge to their relevancy. (Pl.'s Mem. Opp'n Mot. Quash Subpoena 2 at 14, ECF No. 193). Moreover, Donald contends that the requested documents are proportional to the needs of the case, and that the government's failure to address proportionality is a tacit admission that this weighs in favor of compliance with the subpoena. *Id.* at 15-17. Donald further asserts that the government incorrectly assumes Donald has certain documents in his possession. *Id.* at 17. Specifically, Donald explains that his ability to obtain information has been stymied by the Gary Police Department's willful and bad faith withholding of critical documents and an alleged fire that supposedly destroyed numerous relevant documents, and that even if Donald could obtain these records, they would not include FD-302 files of witness interviews. *Id.* Moreover, in arguing that the likely benefit of the requested documents outweighs any burden imposed on the FBI, Donald notes that the government focuses on Request 3 and makes no effort to show that Requests 1 and 2 are unduly burdensome. *Id.*

Donald asserts that the requested documents are critical to Donald's *Monell* claim, pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). *Id.* at 18. Donald explains that, to succeed on this claim, he must prove facts regarding the Gary Police Department's flawed policies and practices at the time of Donald's arrest and conviction in 1992. *Id.*

15

Accordingly, Donald asserts that the FBI's contemporaneous investigations into widespread corruption during the relevant time period would greatly improve his ability to prove his claims. *Id.*

Additionally, Donald argues that Request 3 is narrowly tailored. *Id.* at 18-19. Donald asserts that the government's contention that Request 3 in Subpoena 2 renders it essentially identical to Subpoena 1 is without merit. *Id.* at 20. Donald argues that Subpoena 1 included a request that sought information concerning any FBI investigation of Gary Police Department personnel or the Gary Police Department without a temporal limitation, but that Subpoena 2 does not suffer from the same infirmity. *Id.* Donald further argues that the FBI can likely draw upon far more resources to review the requested documents than the government indicates. *Id.* at 21. Finally, Donald asserts that the government has waived the law enforcement privilege due to its failure to create a privilege log and that, regardless, the privilege is overridden by the need for the materials at issue here. *Id.* at 21-25.

Pursuant to the Court's order, the government filed a combined response to the cross-motion to compel and reply to its own motion to quash. As to relevance, the government notes that Request 3 in Subpoena 2 would require production of documents pertaining to, for example, a note that a Gary Police Department secretary was arrested for drug possession, a background check conducted on a prospective agent who happens to have a speeding ticket, and suspicion of wrongdoing on the part of a Gary Police Department officer or employee who was eventually cleared. (Resp. Pl.'s Cross-Mot. Compel Subpoena 2 at 12, ECF No. 197). The government argues that, because Subpoena 2 seeks such a broad array of documents unrelated to the allegations in this matter, it is not proportional. *Id.* The government further argues that this request seeks documents wholly unrelated to Donald's *Monell* claims. *Id.* at 2-3, 13-14.

The government again notes that the FBI has already produced twenty-nine 302s, including 302s directly related to individuals named in Subpoena 2. *Id.* at 3. The government states that, additionally, there have been or will be numerous depositions, and Donald has also received a partial copy of a report prepared by the International Association of Chiefs of Police covering the 1992 period. *Id.* at 4. As to privilege, the government argues that the lack of privilege log does not constitute a waiver of privilege in this circumstance, and that the *Touhy* regulations expressly provide that an agency should consider privilege law in deciding whether to disclose federal records. *Id.* at 16-21. Finally, the government asserts that it is unreasonable to expect the FBI to review its records to produce files that may have no relevance whatsoever to the instant matter, and that Subpoena 2 is unreasonably burdensome. *Id.* at 2-3, 22.

In his reply to the cross-motion to compel, Donald argues that Subpoena 2 does not, in fact, seek the files that the government listed as examples of irrelevant documents nonetheless encompassed by Request 3. Donald explains that Request 3 seeks documents related to FBI investigations concerning criminal conduct or civil rights violations and would thus not cover a mere note of the arrest of a secretary for drug possession or evidence pertaining to a speeding ticket, which is a civil infraction. (Pl.'s Reply Subpoena 2 at 5, ECF No. 198). Donald also argues that, given the stringent evidentiary requirements he must meet to succeed on his *Monell* claims, the government cannot credibly contend that the information sought by Subpoena 2 is irrelevant. *Id.* at 6-7, 9-11. Donald again asserts that Subpoena 2 is proportional to the needs of the case and not unduly burdensome, and that the government's failure to set forth the number of documents it would need to review or counter Donald's position that it has the necessary resources to conduct such a review is telling. *Id.* at 7-8. Finally, Donald states that the government has failed to

demonstrate how the requested documents are cumulative and to properly assert the law enforcement privilege. *Id.* at 11-12, 13-14.

Once again, the Court is not unsympathetic to Donald's arguments. Further, the Court maintains its previously stated belief that Donald's claims are serious and justify placing a burden on parties and non-parties alike through valid—and balanced—discovery requests. Nonetheless, the government has demonstrated that Subpoena 2 imposes an undue burden and must be quashed. Initially, the Court notes that Donald asserts that he has made every effort to compromise with the government. (Pl.'s Mem. Opp'n Mot. Quash Subpoena 2 at 9, ECF No. 193). This is simply not so. In Donald's very motion to compel he suggests yet another amendment to Subpoena 2, which does not appear to have been offered to the government prior to the filing of its motion to quash. *Id.* at 10 (noting that Donald stands by his offer to amend Request 3 as already emailed to the government, with the exception that he is further willing to forego obtaining the information requested in item (f)).

Moreover, Donald's argument that the government focuses solely on the burden imposed by Request 3, fails to address Requests 1 and 2, and yet moves to quash the entirety of Subpoena 2 is unavailing. As with the Subpoena 1, the Court will not exercise its discretion to parse Subpoena 2 and enforce the production of some smaller subset of information than that which the entire subpoena seeks. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); *Griffin*, 542 F.3d at 223 ("Moreover, the district court was well within its discretion to quash the subpoena as unduly burdensome."); *Tiberi*, 40 F.3d at 112 ("The district court's decision to quash the subpoena and to allow CIGNA to start anew on a clean slate instead of itself modifying the subpoena was within the court's sound discretion.")). To do so would be to unfairly reward Donald despite his failure to comply with Federal Rule of Civil Procedure 45's mandate that the party serving a subpoena take reasonable

steps to avoid the imposition of an undue burden. The dispute before the Court is whether Subpoena 2, as served, meets the requirements of Rules 45 and 26 of the Federal Rules of Civil Procedure (under Donald's interpretation of the law) or the APA (under the government's interpretation of the law). It is irrelevant that the government focused its arguments on Request 3.

Donald's argument regarding the government's specific examples of irrelevant materials sought by Subpoena 2 does not mirror the language of the discovery request he drafted. There remain numerous examples of irrelevant documents that would fall under the subpoena requests, including, *inter alia*, investigations into individuals who were later cleared of wrongdoing, investigations into Gary Police Department personnel for drug possession, and investigations into prospective agents that reveal arrests for reckless driving. There remains a swath of wholly irrelevant material covered by the requests in Subpoena 2.

Donald contends that Subpoena 2 does not suffer from Subpoena 1's lack of temporal limitation, but he fails to adequately counter the government's argument that the inclusion of the caveat, "even if the investigation was opened subsequent to that period," in Request 3 renders the temporal limitation of 1987 to 1992 of little value in minimizing the burden of compliance. The addition of this clause would necessitate that the FBI review effectively the same number of files as it would if the initial limitation of 1987 to 1992 was never included. As before, the government has successfully shown that compliance with the terms of the subpoena would impose an undue burden on the agency. Compliance with Subpoena 2 cannot be compelled under the Federal Rules of Civil Procedure.

### B.    Analysis Under the Administrative Procedure Act

Pursuant to the APA, a court may not set aside an agency action unless the court determines it to be "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or

'without observance of procedure required by law.'" *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995) (citing 5 U.S.C. §§ 706(2)(A), 706(2)(D)). When evaluating a decision under the arbitrary and capricious standard, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (internal citation omitted). While "this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* (internal citation omitted). Nonetheless,

> [w]here an 'agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise,' the agency has violated the standards of the APA.

*Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Finally, the party challenging the agency action bears the burden of proof. *Id.* (internal citations omitted).

The Code of Federal Regulations dictates when the DOJ may disclose information through documents or the oral testimony of an employee:

> (b) The responsible official, subject to the terms of paragraph (c) of this section, may authorize the appearance and testimony of a present or former Department employee, or the production of material from Department files if:

> (1) There is no objection after inquiry of the originating component;

> (2) The demanded disclosure, in the judgment of the responsible official, is appropriate under the factors specified in § 16.26(a) of this part; and

> (3) None of the factors specified in § 16.26(b) of this part exists with respect to the demanded disclosure.

28 C.F.R. § 16.24(b). Section 16.26 enumerates the relevant factors to be considered:

> (a) In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:

> (1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and
>
> (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

(b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:

> (1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. §§ 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, Fed. R. Crim. P., Rule 6(e),
>
> (2) Disclosure would violate a specific regulation;
>
> (3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,
>
> (4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,
>
> (5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,
>
> (6) Disclosure would improperly reveal trade secrets without the owner's consent.

28 C.F.R. § 16.26(a)-(b). Per § 16.26(a)(1), one factor to consider is whether disclosure is appropriate under the rules of procedure that govern the issue at hand—in this instance, the Federal Rules of Civil Procedure, including the scope of discovery as provided in Rule 26(b) and stated in the previous section of this order. And, both the Federal Rules of Civil Procedure and the *Touhy* regulations require the consideration of any valid privilege.

Because the Code of Federal Regulations points the Court to Rule 26, the Court reincorporates its findings from the previous section as to the parties' arguments. The critical difference is that here the Court must take the extra step of determining whether the FBI's denial

of the subpoena requests was arbitrary or capricious, and only compel compliance with the subpoena if the Court answers this question in the affirmative.

Once again, and as the Court detailed in the previous section, the government explains the burden imposed by the subpoena requests, notes the FBI resources that would be consumed by complying with the requests, makes arguments as to Donald's access to the relevant information from other sources, and asserts the privileged nature of the materials sought. While Donald makes compelling points in his favor, the FBI's reasons for denying the subpoena requests—as described in the government's filings—fall far short of being either arbitrary or capricious. Rather, the government has demonstrated that the FBI considered the necessary factors as laid out in the Code of Federal Regulations and found they obliged the agency to deny the subpoena requests. Under the APA's arbitrary and capricious standard, the Court cannot compel the FBI to comply with the subpoena.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the United States of America's Motion to Quash Subpoena [DE 185] and **DENIES** Plaintiff's Cross-Motion to Compel Special Agent in Charge Grant Mendenhall to Comply with Plaintiff's Fed. R. Civ. P. 45 Subpoena [DE 191].

The Court **QUASHES** the subpoena issued by Plaintiff Willie T. Donald to FBI SAC Grant Mendenhall.

The Court **ORDERS** that any future motions to compel, motions to quash, or motions concerning a denial under *Touhy* regulations must contain a concise statement (1) of the terms of the subpoena at issue, (2) of any compromise the moving party is willing to make, and (3) that the moving party made a reasonable effort to obtain a statement of the non-moving party as to the same. In any future motion to quash or denial under *Touhy* regulations, the government may first

seek a ruling on whether this order should prevent Donald from issuing it a third subpoena in this matter.

So ORDERED this 2nd day of June, 2020.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT