**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| WILLIE T. DONALD, | ) | |
| | ) | |
| Plaintiff, | ) | No: 2:17-cv-00032-TLS |
| | ) | |
| v. | ) | Hon. Judge Theresa L. Springmann |
| | ) | |
| | ) | |
| | ) | |
| BRUCE OUTLAW, et al., | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |

**PLAINTIFF WILLIAM T. DONALD'S REPLY TO
DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE**

Plaintiff WILLIE T. DONALD, by his attorneys, respectfully replies to Defendants'

response to Plaintiff's motion *in limine*. In support, Plaintiff states as follows:

**REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 1
TO BAR THE IRRELEVANT OPINIONS OF JEROME EZELL**

The thrust of Mr. Ezell's opinion – whether Northwestern students did or did not comply with standards applicable to law enforcement officers, which they obviously are not – is plainly irrelevant to any issue on trial. With Defendants having now weighed in, it is apparent that Defendants are trying to use Mr. Ezell as an (improper) vessel to shoehorn into the trial hearsay newspaper accounts about another investigation undertaken by the Northwestern Innocent Project "suggest[ing] improprieties."

The primary opinion lacks relevance, methodology, and foundation. The students and investigator never claimed to be law enforcement officers or to be using law enforcement techniques, and Mr. Ezell neither claimed nor disclosed any expertise or basis to testify about investigations outside of law enforcement. Mr. Ezell's second opinion is even less well-founded, as he admits he has no basis to conclude whether the Medill Innocence Project used improper techniques. The Court should exclude Mr. Ezell's unfounded and irrelevant testimony.

## ARGUMENT

**A. Mr. Ezell's opinions on contacts with eyewitnesses are irrelevant, lack proper methodology, and lack foundation.**

Most of Mr. Ezell's opinions are criticisms of how Northwestern University students and an investigator from their class interviewed or attempted to interview eyewitnesses who testified in Plaintiff's criminal proceedings more than a decade after Plaintiff was wrongfully convicted. Dkt. 354-1 at 9-12, 14-16.

Even assuming he had expertise on how Innocence Projects (as opposed to law enforcement agencies) are supposed to conduct investigations, Mr. Ezell's testimony is not relevant. He claims that when Northwestern University students and an investigator from their class contacted witnesses, they failed to use the same techniques that police officers would use. But Northwestern University is not

1

on trial, and neither are the Northwestern University students and investigator who investigated Plaintiff's claims of innocence for a journalism class.

At bottom, Defendants want the jury to disbelieve the testimony of eyewitness Rhonda Fleming (*née* Williams). Defendants have failed to rebut, and in some instances have not even addressed (and therefore waived) Plaintiff's arguments for excluding Mr. Ezell's testimony on these points.

First, as Plaintiff argued in his initial motion, it is improper to use an expert to tell a jury whether to believe a particular eyewitness. *See Davis v. Duran,* 277 F.R.D. 362, 370 (N.D. Ill. 2011) ("It is a fundamental premise of our trial system that 'determining the weight and credibility of witness testimony . . . 'belongs to the jury who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'" (*quoting United States v. Scheffer,* 523 U.S. 303, 313 (1998)). Defendants concede that Mr. Ezell may not opine on whether Ms. Fleming was telling the truth when she recanted her identification, Dkt. 365 at 7, but argue that Mr. Ezell's testimony will give the jury "the appropriate context surrounding Fleming recantation the investigative methods used by Mr. Serritella and the Innocence Project to secure the same." *Id.* That makes no sense; the only reason why Defendants want Mr. Ezell to provide "context" is so that Mr. Ezell can give his opinion on the "weight and credibility" of Ms. Fleming's recantation.

Indeed, Mr. Ezell explicitly states that he will tell the jury to disbelieve Ms. Fleming. He writes: "the trust worthiness and true accuracy of the substance of the statement [Ms. Fleming's recantation] is unknown and highly subject to concerns regarding its accuracy." Dkt. 354-1 at 16. He also writes that the Northwestern investigator's "non standardized procedures or methodologies . . . could result in inaccurate or false statements [to] be produced"—in other words, that the Northwestern University investigation caused Ms. Fleming to give an inaccurate or false statement, and her

recantation should therefore not be believed by the jury. *Id.* Defendants cannot get around the plain and direct words of Mr. Ezell's opinion: if he is allowed to testify, he will tell the jury not to believe Ms. Fleming's recantation and invade the jury's decision. This should not be allowed. The jury can hear Ms. Fleming's recantation for themselves. Defendants can cross-examine Ms. Fleming on her recantation and present any other impeachment evidence the Court deems appropriate. Mr. Ezell has nothing relevant to add – other than his opinion that he does not believe her.

Second, Mr. Ezell provides no reliable methodology for his opinions on the weight and credibility of Ms. Fleming's recantation. He never explains why his experience in law enforcement allows him to form a reliable critique of an investigation conducted in a journalism class. Rule 702 clearly establishes that an expert needs specialized knowledge and expertise to testify on a topic, expertise that Mr. Ezell does not have. *United States v. Truitt,* 938 F.3d 885, 889-90 (7th Cir. 2019) (noting that a generalist can speak to specialized subjects with which he has experience, but not those with which he does not). And Defendants concede, and have not rebutted, that Mr. Ezell knows nothing about journalism standards, or indeed about standards for any kind of investigation outside of law enforcement investigations.

Despite this lack of expertise as to journalism, Defendants admit they intend to have Mr. Ezell opine on the "applicable standards that should have been followed" when Northwestern University students and an investigator contacted eyewitnesses. Dkt. 365 at 6. In other words, Mr. Ezell will tell the jury that the Northwestern University students and investigator acted improperly by not using law enforcement techniques for their journalism class. Mr. Ezell has no basis to tell the jury what techniques are proper and improper in investigations outside of law enforcement, which are beyond the scope of his specialized knowledge.

In response, Defendants argue that Mr. Ezell's expertise extends to "methodology principles generally accepted when gathering witness information that will be offered to a court in a criminal proceeding." *Id*. But that isn't what Mr. Ezell said in his report; he was very clear that his testimony would be specific to law enforcement investigations and never claimed foundation to testify on all investigations (assuming he even could have established such an expertise). Indeed, Mr. Ezell constantly referred to what was acceptable in "standardized law enforcement" policies, practices, and protocols. Dkt. 354-1 at 12 (discussing what Mr. Ezell believed would be "permitted or acceptable in standardized law enforcement protocols"); at 15 (discussing what would be "permitted pursuant to standardized law enforcement policies and practices" and stating that such a law enforcement investigation "would adhere to State or Federal statutory (where applicable) requirements, legitimate prosecutorial procedures, Appellate and Supreme Court case law guidelines all of which Law Enforcement Officers have been trained in an academic law enforcement academy setting and academic in-service training by certified legal instructors.").

In other words, this motion would have presented a different question had Mr. Ezell sought to opine on whether the manner in which the Northwestern people conducted the investigation influenced the witnesses' testimony. That testimony, too, likely would have been inadmissible, as Mr. Ezell has no background in human psychology. But all that is before the Court is whether Mr. Ezell should be allowed to opine that the students and investigator did not follow police investigation standards. That issue, as framed by Mr. Ezell, is obviously irrelevant.

Critically, Mr. Ezell never explains why he believes that only "standard law enforcement methodologies" can be used for any kinds of interviews. Lots of people conduct interviews, including students in journalism classes, investigators in civil and criminal cases, and attorneys representing clients. Those investigators have different purposes, obligations, and legal requirements in their

investigations than law enforcement officers.

Although Mr. Ezell claims that "advocacy journalism" appears "non-standardized" to him, he has no basis to evaluate what methodologies are appropriate in journalism. Defendants concede that Mr. Ezell lacks any expertise in journalism or methods of interviewing witnesses outside of law enforcement. And because Mr. Ezell never disclosed any reason why his experience could be applied outside of his field—that is, from law enforcement to journalism or even legal advocacy—his opinions on whether a non-law-enforcement interview met law-enforcement standards lacks proper methodology and is irrelevant. Defendants never explain how Mr. Ezell can bridge this gap, and his methodology is therefore insufficient to allow him to testify to his conclusion.

Third, Mr. Ezell also never provided a foundation for his opinion. As Plaintiff argued in his motion, Mr. Ezell failed to ground his opinions in research, expertise, or even any real explanation. He gives only his say-so as to how police investigations should be done. He does not link any of his opinions about how investigations should be done with any specific source he has cited. He does not explain how police investigations typically work or why they are typically conduced in any particular manner. Instead, he just says that what the Northwestern University students and investigator did was not what police would do. As argued in Plaintiff's original motion, this is classic *ipse dixit* testimony that the Court, in its role as a gatekeeper, should exclude.[1]

---

[1] In response, Defendants cite just one source of standards that Mr. Ezell quotes: the 2019 Report of the Third Circuit Task Force on Eyewitness Identifications, which Mr. Ezell cited for the broad proposition that nonleading cognitive interview techniques are the "best ways to interrogate persons about their memories." Dkt. 354-1 at 10. Of course, that 2019 report cannot possibly be the source of standards for the police investigation in the early 1990's that caused Plaintiff's conviction or for the interactions between Northwestern students and investigator and eyewitnesses in the mid-to-late 2000's. The report was written more than a decade later and cannot provide the standards that Mr. Ezell relies on. Mr. Ezell fails to specifically cite any other source or explain the connection between his materials reviewed and his say-so opinions on applicable standards. And he never explains why those materials can be relied on as a source of standards for journalism investigations or other non-law-enforcement investigations. Thus, Mr. Ezell's opinions lack foundation.

Finally, Defendants give no defense at all of Mr. Ezell's opinions regarding Northwestern students' attempts to contact eyewitness Kimerly Camacho (*née* Belinsky). As Plaintiff previously pointed out, Mr. Ezell's opinions on that point are irrelevant because the jury can view her testimony and decide whether to believe her without Mr. Ezell's help, and whether the Northwestern class used "law enforcement techniques" in trying to contact her is irrelevant. Dkt. 354 at 5. Defendants did not address these arguments and have waived this point. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

**B. Mr. Ezell's opinion about a separate and unrelated Medill Innocence Project investigation is irrelevant and lacks foundation.**

Mr. Ezell's remaining opinions fare no better. According to Defendants' Response, Mr. Ezell apparently discovered several *Chicago Tribune* newspaper articles describing allegations made against Northwestern's Innocence Project in a case involving Anthony Porter. It must be noted that these allegations were made by the lawyers hired by the City of Chicago defending a civil lawsuit brought by Mr. Porter. The newspaper articles report about accusations made by these civil defense attorneys that female students supposedly "flirted" with a man named Altstory Simon and paid for his lunch to get him to confess to the murder for which Anthony Porter was wrongfully convicted.

The fact that the accusations were part of a *Tribune* story does not make them true. Defendants' Response tries to suggest that Northwestern was "noted" (whatever that means) as "fabricating evidence," Dkt. 368 at 8, but nothing was ever certainly adjudicated as such. They are simply allegations.[2]

Recognizing that these civil defense attorney's accusations as reported in a newspaper story would not be admissible, Defendants seek to try to bootstrap them into this trial by having their

---

[2] In an attempt to discredit Northwestern, these same defense attorneys for the City of Chicago went so far as to file a civil lawsuit on behalf of Alstory Simon, generating even more newspaper stories. See Dkt. 368 at 8 (citing exhibits).

"expert" rely on them. That should not be allowed. Even if true, the fact that different Northwestern University's Medill Innocence Project students and investigators acted improperly in at least one other investigation at another time is irrelevant. Defendants concede that the Simon investigation did not involve Plaintiff or the students and investigator from Plaintiff's investigation. This entire line of testimony is simply too far afield from the real question for the jury, *i.e.,* whether police pressured eyewitnesses to identify Plaintiff and fabricated statements from those eyewitnesses.

Defendants' only defense is that "it may explain preparation, knowledge, and plans of the Innocence Project as it related to Fleming." Dkt. 365 at 7-8. That is an untenable stretch, but even assuming for the sake of argument that it was that easy to bring in unsubstantiated allegations, the Simon investigation involved different students and investigators from Plaintiff's investigation. Defendants' argument fails because the "Innocence Project" is not a person who will testify at this trial, and Federal Rule of Evidence 404 (which Defendants do not cite in their response) addresses character evidence regarding witnesses, and does not allow a party to impeach a witness with character evidence regarding third parties.

Defendants also failed to rebut Plaintiff's main argument on this point: Mr. Ezell is an improper vehicle to attempt to inject this issue into the trial. Mr. Ezell admits he has no foundation to determine the overall integrity of the Medill Innocence Project (which, again, is not a relevant opinion in the first place). He conceded that "there is no basis to confirm if the improper tactics reported by the news media accounts are unsubstantiated or did not occur in this case regarding contact with Ms. Fleming." *Id.* at 13-14. In other words, Mr. Ezell can't say whether the Medill Innocence Project used improper tactics or not. As Plaintiff argued, and Defendants failed to rebut (and therefore waived), this means Mr. Ezell has no foundation for these opinions.

Mr. Ezell's "opinions" would not be helpful to the jury. Because they lack foundation, proper methodology, and relevance, and because Defendants failed to address several of Plaintiff's arguments and therefore conceded them, Mr. Ezell's testimony and report should be barred at trial.

### REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 2 TO BAR TWICE-REMOVED "BAD ACTS" EVIDENCE RELATING TO THE MEDILL INNOCENCE PROJECT

As argued above, Mr. Ezell cannot be permitted to bootstrap into the trial the newspaper allegations about unrelated activities of Northwestern University from the Alstory Simon case under the guise of being an expert. That expert witness issue aside, the subject matter is also independently inadmissible for the reasons set forth in Plaintiff's second motion *in limine.*

#### A. Plaintiff's Motion is Properly Tailored and Appropriate

Defendants first attempt to convince the Court that this motion is premature because the Court cannot be sure the evidence would not be admissible for at least some purpose. Not so. This motion is both appropriate as a pre-trial matter and properly tailored to exclude highly inflammatory and irrelevant testimony. It properly seeks to exclude evidence that would be inadmissible *per se,* rather than attempting to bar evidence that could be found admissible at trial. *Washington Frontier League Baseball, LLC v. Zimmerman,* No. 14-cv-1862, 2018 WL 3120623, at *2 (S.D. Ind. June 26, 2018) ("A motion *in limine* weeds out evidence that is not admissible for any purpose.").

#### B. Evidence About Unrelated Activities of Northwestern University, the Medill Project, and Associated Individuals Should be Barred or Limited As Requested

Plaintiff's motion made it clear that he does not object to evidence related to the actual facts of this case. Rather, Plaintiff seeks to bar the introduction of evidence about the Medill Innocence Project's role in unrelated innocence investigations involving different defendants, different students, a different investigator, and different facts altogether. No evidence about unrelated investigations will help the jury answer whether police pressured eyewitnesses to identify Plaintiff, and fabricated

statements from those eyewitnesses-actions that culminated in Plaintiff's wrongful conviction. Rather, this inflammatory information will simply confuse the jury and improperly prejudice Plaintiff. Defendants fail to address this nuance in their Response, and their challenges to this Motion must fail.

Defendants' first failure to address the nuance between related and unrelated facts to this litigation can be seen in their efforts to create a connection between Plaintiff's case and the Alstory Simon case. As discussed in Plaintiff's first Motion in Limine and Plaintiff's reply to Defendants' Response, the Alstory Simon case only reinforces why unrelated investigations can cloud the issues in this litigation and should be excluded at trial.

As stated, the civil defense attorneys defending the City of Chicago in Anthony Porter's wrongful conviction lawsuit alleged that the Medill Innocence Project, housed at Northwestern University, mishandled an investigation back in 1998 and 1999. Dkt. 366-5 at 8. That case did not involve Plaintiff or any parties in this action. It also did not involve Sergio Serritella, the investigator who spoke to witnesses in Plaintiff's investigation; any of the students who contacted witnesses on behalf of Plaintiff; Rebakah Wanger, the administrative assistant for Medill; or even Northwestern's 30(b)(6) designee. Defendants cannot impeach witnesses in this case with facts about an associated entity that do not involve these witnesses whatsoever. *See Veal v.Kachiroubas,* No. 12 C 8342, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) (noting that evidence of an entity-wide "policy, practice or custom involving multiple improper . . . actions poses a danger of undue prejudice . . . by creating the perception that the [entity] routinely acts improperly, even if [its employees] acted properly in this case.").

Just as those irrelevant and unrelated facts should be excluded, so too should testimony from individuals with no connection to Plaintiff's claims or case. Plaintiff moves to exclude testimony about unrelated facts from David Protess, Sergio Serritella, Rebekah Wanger, and Bennett-Hebbeln.

Defendants' Response does not meaningfully rebut any of Plaintiff's reasons justifying limitations to these witnesses' testimony, and therefore Plaintiff's Motion should be granted.

**Limiting the Testimony of David Protess.** As stated in Plaintiff's Motion, any testimony outside of Protess's direct conversations with Plaintiff would be rife with hearsay and of no value in helping the jury understand disputed facts. Defendants contend that excluding this testimony is premature, but fail to challenge the irrelevancy of any information that Protess could offer outside of direct conversations he had with Plaintiff. Defendants have therefore waived that argument. *See Bonte,* 624 F.3d at 466.

**Excluding the Testimony of Rebekah Wanger.** Plaintiff argues that Wanger has no personal experience with Plaintiff or the field investigation into his claims. Defendants' vague argument that Wanger has "information" regarding the Medill Innocence Project's "participants" as an administrative assistant does nothing to challenge this point. Given Defendants' concession that she lacks any direct experience with Plaintiff or of the field investigation of Plaintiff's case, her irrelevant testimony should be barred.

**Limiting the Testimony of Sergio Serritella.** Plaintiff makes several arguments about the limitations of Serritella's testimony, many of which Defendants leave unchallenged. First, Defendants do not respond to Plaintiff's arguments opposing Serritella's designation as an expert. They do not rebut that (1) the topics of Mr. Serritella's role as a teaching assistant in the Medill Innocence Project course, the structure of the class, and his discussions with Fleming are lay topics, not topics for opinion testimony; or (2) the other issues raised by Defendants on which Serritella might opine are well beyond his competence, as he is not a journalist, legal ethicist, polygraph administrator, law enforcement investigator, or scientist.[3] By waiving those arguments, Serritella's testimony as a

---

[3] Defendants also do not even respond to this argument in Plaintiff's Motion in Limine No. 12, which incorporates this argument and likewise seeks to bar Mr. Serritella's alleged expert testimony. Dkt. 365 at 17-18 (claiming Serritella is an "investigator" but not addressing his lack of competence at all).

proposed "expert" should be excluded at trial. *See Bonte,* 624 F.3d at 466.

In fact, Defendants only argue that Mr. Serritella's "investigation, actual surveillance on Fleming," the fact that he secured Fleming's recantation, and the standards and criteria he used to conduct his investigation into Fleming are relevant. As stated in Plaintiff's motion, Plaintiff does not oppose Mr. Serritella's testimony on these topics as limited to his direct factual knowledge, not any specialized understanding as an expert. As Defendants do not challenge this argument, Plaintiff's Motion limiting Mr. Serritella's testimony as a fact witness limited to those topics on which he has direct factual knowledge should be granted.

**Excluding the Testimony of 30(b)(6) representative Bennett-Hebbeln.** Defendants do not dispute that Ms. Bennett-Hebbeln has no direct knowledge of Plaintiff, any other parties, or any witnesses to this case, nor that she cannot speak to how individual Northwestern faculty or students acted within the Medill Innocence Project journalism course. On that concession of irrelevancy alone, Plaintiff's Motion should be granted as to her.

Defendants also fail to respond to Plaintiff's argument that Ms. Bennett-Hebbeln cannot testify to highly fact-specific questions regarding Northwestern University's Medill Innocence Project with any legal authority supporting their response. To start, they fail to argue why *Bell v. Pension Comm. of ATH Holding Co., LLC,* No. 1:15-CV-02062-TWP-MPB, 2018 WL 7350951, at *6 (S.D. Ind. Aug. 16, 2018), a case from this District, does not bear on the matter.

In *Bell,* the Court found it unreasonable to expect a 30(b)(6) representative to answer "highly fact-specific questions" about how personnel between two companies negotiated a contract. *Id.* at 6. Likewise, Ms. Bennett-Hebbeln's testimony would not help explain factually complex scenarios involving students conducting field interviews off-campus. Indeed, two cases cited by Plaintiff, *Bell*

and *Sara Lee* support that "seeking testimony from a non-party about how a party acted in a given instance is particularly inappropriate." *Bell* at *6; *see also Sara Lee Corp. v. Kraft Foods Inc*, 276 F.R.D. 500,503 (N.D. Ill. 2011) 276 F.R.D. at 503 ("[T]he Court doubts that a Rule 30(b)(6) witness should be allowed to testify about the details of a car accident in lieu of the corporation's truck driver who actually witnessed the event."). This is even more so the case when Northwestern is not on trial, is not a party to this case, and has nothing to do with Plaintiff's claims of police misconduct. Plaintiff's Motion should be granted as to Bennett-Hebbeln's testimony as well.

### C.  Evidence of the Medill Innocence Project's Other Investigations Does Not Satisfy Rule 404(b)(2).

There is also no merit to Defendants' contention that Rule 404 permits evidence of unrelated Medill Innocence Project investigations.

Defendants argue that Rule 404(b)(2) permits this evidence to show "the Innocence Project's plan and preparation methods undertaken to secure recantation testimony from witnesses like Fleming," but that argument is unpersuasive. As a factual matter, Defendants know that the Medill Innocence Project was a "journalism project" run as a quarterly class that Northwestern students took to learn to become investigative journalists. Dkt. 354-4 (Serritella Dep.) at 16:6-8, 17:22-18:1. During the class, they would review files, divide into teams, and build their own reporting agendas for the week, before repeating the same process (after reviewing their progress) the following week. *Id.* at 45:10-24. Students undertook the "planning and preparation" for their field investigations in those classes on a week-to-week basis. *Id.*

To state the obvious, what other investigators, students, or staff members did years or decades before—as far back as 1998 or 1999, even—has no bearing on what students undertook in 2007 to 2009 when investigating Plaintiff's claims of innocence. Similarly, those investigations cannot explain Mr. Serritella's interactions with a specific witness in 2009. Dkt. 354-2 at 62:6-63:-15.

Defendants' only reference to case law is misplaced. In *United States v. Richards,* 719 F.3d 746, 758 (7th Cir. 2013), the Seventh Circuit stated that "[i]dentification of an at-issue, non-propensity Rule 404(b) exception is a necessary condition for admitting the evidence[.]" 719 F.3d at 759. In determining whether taped phone conversations between the criminal defendant and another witness about drugs occurring in the days leading up to the defendants' arrest for drug possession were admissible under Rule 404(b), the Court found that the calls were relevant as to the defendants' non-propensity purpose of knowing that drugs were in his possession. *Id.* at 759. There is no parallel to this civil case. Not only are the Northwestern-associated witnesses not defendants in this trial, but they did not engage in any of the previous actions alleged by Defendants. Nor do Defendants show how the actions of previous private investigators are somehow at issue in this litigation. The Defendants cannot put the Medill Innocence Project on trial and they cannot smear these witnesses by blaming them for acts of other individuals associated with that entity in years prior. *Veal*, 2014 WL 321708, at *6.

Finally, Defendants do not point to any probative value associated with this evidence that would outweigh the substantial risk of unfair prejudice. As Plaintiff has explained, the other acts are extremely remote from the investigation into Plaintiff's innocence. Thus, the offered evidence is "likely to be unduly prejudicial and inflammatory" and would fail Rule 403 balancing even if Defendants could establish a permissible other purpose. *See, e.g., Rivera v. Guevara,* No. 12-CV-04428, 2018 WL 11468923, at *6 (N.D. Ill. June 1, 2018) (in wrongful conviction case, court excludes 404(b) evidence which "occurred nine or more years" after the relevant facts at issue, and involves unrelated facts); *United States v. Gallardo,* No. 13 CR 660, 2015 WL 832287, at *4 (N.D. Ill. Feb. 25, 2015) (explaining that where "slightly probative" 404(b) evidence would also cause a

"temptation to draw an impermissible propensity inference," it should be barred, and noting that a limiting instruction does not eliminate the concern of prejudice).

## CONCLUSION

Because the unrelated activities of Northwestern University, the Medill Project, and associated individuals is subject matter that is prejudicial, not outweighed by any probative value, and independently inadmissible, it should be barred.

### REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 3 TO BAR ANY REFERENCE TO THE INDIVIDUAL DEFENDANTS' FINANCIAL INABILITY TO PAY A JUDGMENT FOR COMPENSATORY DAMAGES

Defendants' Response is correct, but only partially. Plaintiff's motion did overstep in seeking to bar Defendant Officers from introducing evidence of their finances as bearing on punitive damages. To the extent Plaintiff seeks punitive damages, Defendants' financial picture could be relevant.

To be clear, however, Defendants have not produced any such evidence to date, and if they do, they would have to excuse the untimely disclosure in order to persuade the Court to allow it. That issue is not yet before the Court.

That said, should Defendants seek to introduce evidence relating to purported inability to pay at trial, and should the Court decide to allow it, that would open the door to an instruction that Defendants are only personally responsible for the punitive damages, and not the compensatory damages. Plaintiff's motion cited case laws, and Defendants do not, and cannot, dispute that this is the law. Motions at 17-18 (citing case). *See also Lawson v. Trowbridge,* 153 F.3d 368, 379-380 (7th Cir. 1998) (if individual officers inject an inability to pay, the jury must be informed that the officers are not responsible for the compensatory damages).

### REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 4 TO BAR ANY REFERENCE OR ARGUMENT THAT ANY DEFENDANT WILL SUFFER ADVERSE CONSEQUENCES

Plaintiff withdraws this motion.

**REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 5
TO BAR POLICE OFFICERS FROM WEARING POLICE ATTIRE,
BADGES, AND/OR MEDALS DURING TRIAL**

Plaintiff respectfully submits that in a civil case, all witnesses should testify in formal clothing rather than in uniform, so as to avoid the risk that the perceived credibility of certain witnesses will be unfairly elevated. Although not from an Indiana court, Plaintiff did cite a case holding that testimony in uniform creates some risk of prejudice.

Defendants postulate that certain witnesses might come directly from duty to the witness stand, but it hardly seems like a prohibitive imposition to bring a change of clothes.

**REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 6
TO BAR DEFENDANTS FROM BLAMING PROSECUTORS
FOR THEIR OWN MISCONDUCT**

Defendants' response erects a strawman, implying Plaintiff supposedly seeks to bar all references to the prosecutor's role. That would be overbroad relief, and Plaintiff does not seek it.

Upon review, the relief sought in this motion is probably better evaluated in the context of trial rather than *in limine,* with one exception. Defendants' response implies they believe they should be permitted to elicit that the prosecutor's opinion that Fleming's doubts about Plaintiff's guilt did not affect the probable cause analysis. That opinion is not only undisclosed, and therefore inadmissible on that basis, but it is irrelevant too – it is the civil jury, not the criminal prosecutor, who must decide that question.

**REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 7
TO BAR TESTIMONY OR EVIDENCE OF POLYGRAPH EXAMINATION**

Defendants do not dispute the legal proposition that polygraph evidence is inadmissible, and cite no cases to contradict those relied on by Plaintiff. Nor do they articulate a coherent, much less persuasive, basis for why it would be relevant. Polygraph references should be barred.

**REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 8
TO BAR EVIDENCE RELATING TO SETTLEMENT**

This Motion is agreed, with the relief applying both ways.

**REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 9
TO BAR ANY REFERENCE TO JURORS' PECUNIARY INTERESTS**

This Motion is agreed, with the relief applying both ways.

**REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 10
TO BAR DUPLICATIVE WITNESS EXAMINATIONS**

Defendants' Response misses the point. Plaintiff obviously does not dispute, for example, the right of the City's lawyers to cross-examine on *Monell* subjects not covered by the Defendant Officers' attorneys. The purpose of the motion is to avoid duplicative examinations on the same topics, particularly those on which the Defendants are all aligned. In the interests of efficiency and respect for the juror's time, the defense attorneys presumably intend to divide the subject matter in a manner that is not redundant. Their Response does not suggest otherwise, and Plaintiff's motion should be granted.

**REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 11
TO EXCLUDE NON-PARTY WITNESS FROM THE COURTROOM**

Defendants' Response properly points out that it would be premature to address any violations of a sequester order, but the parties are in apparent agreement that such an agreement is appropriate.

**REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 12
TO BAR INADMISSIBLE NON-RETAINED EXPERT TESTIMONY**

Defendants argue that this motion should be denied as premature. To the contrary, this is exactly the kind of motion that needs to be resolved prior to the trial.

**A. The Prosecutors: Moore, Trevino, and Benson**

Other than suggesting that an order on these witnesses would be premature, Defendants offer no reason to deny this motion. There is no reason to wait to hear what these witnesses will

say if the proffered testimony is inadmissible. That is the whole point of a motion *in limine.*

On the merits, Defendants do not, and cannot, dispute the law cited in Plaintiff's motion: witness opinion testimony on the existence (or not) of probable cause is inadmissible. Indeed, Defendants sought similar relief against Plaintiff's witnesses. The cases are unambiguous: both *Jiminez* and *Rivera,* among others, confirm that opinion witnesses cannot opine on whether or not there is probable cause. Dkt. No. 354 at 33.

If the prosecutor witnesses have other admissible testimony, Defendants are deliberately vague about what that might be. Having been given the opportunity to put their cards on the table, they decline to proffer anything admissible. The witnesses should be barred on that basis.

### B.  Defense Counsel: Merryman

Defendants completely ignore Plaintiff's privilege objection, and the opinion testimony at issue can barred on that ground alone. That said, are Defendants suggesting that Mr. Merryman should be permitted to opine that the Defendants framed Plaintiff? That would be the flip side of the (inadmissible) testimony of the prosecutors that there was probable cause. The Court should limit both sides to the facts in dispute.

The description in Defendants' Response that Mr. Merryman will recount prior conversations sounds a lot like pure hearsay, although Plaintiff has already conceded that if Mr. Merryman had interactions with witnesses, he can conceivably impeach them. As with the prosecutors, however, he should be barred, from pontificating about his opinions regarding Plaintiff's case.   The same applies for any reasons for his withdrawal, which are not relevant.

### C.  Serritella

As Defendants have now implicitly conceded, this private investigator had no involvement in the case on trial. No admissible testimony has been proffered. Defendants' Response never suggests otherwise.

### D.  Barnes and Evans

As Gary's mayor during the relevant time frame, his policy-maker testimony is relevant to the *Monell* claim. Defendants are correct that he is properly a fact witness. Fact witnesses, however, are not ordinarily permitted to share opinions with the jury about who they think should win a given issue and why. Barnes should be no exception. As argued in Plaintiff's motion at 37-38 without contradiction, witnesses disclosed under Rule 26(a)(2)(C) are strictly limited to actual observations. Where the witness issued no Rule 26(a)(2)(B) report, he is limited to work on the underlying case. The motion to bar his opinions should there be granted. This is even more true for Evans. It is not disputed that he was not working at the Department until 1994, after the Donald investigation had concluded.

### REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 13 TO BAR CERTAIN IRRELEVANT MATERIAL FROM CRIMINAL, APPELLATE AND POST-CONVICTION PROCEEDINGS

The briefing on this motion has become a bit messy and confusing. Fortunately, the parties do not appear far apart on the fairly narrow issues raised.

As a general matter, Defendants are correct that the prior procedural history is relevant to the story and the jury's understanding of the case. Plaintiff's motion argued that wholesale introduction of entire transcripts would be improper, and the Defendants do not appear to be suggesting otherwise. Defendants do point out that parts of those transcripts may be admissible (*e.g.,* to impeach or under an exception to the hearsay rules) but to the extent the motion sought to bar introduction into evidence of the entire transcript of any prior proceeding, that should be granted.

The second part of Plaintiff's motion should also be granted. The fact that Plaintiff originally lost a motion to suppress cannot stop him in any respect at the civil trial where the predicate verdict has been reversed. The *Evans* case held exactly that, and Defendants' Response does not appear to dispute that.  To hose two limited extents, this motion should be granted.

## REPLY TO RESPONSE TO PLAINTIFF'S MOTION IN LIMINE NO. 14
## TO BAR "CONTRIBUTORY NEGLIGENCE" DEFENSE

Defendants miss the point of Plaintiff's argument here. To start, they fail to distinguish the non-intentional tort of negligent infliction of emotional distress (NIED) from the intentional tort of intentional infliction of emotional distress (IIED), which the court allowed to proceed against the City of Gary in its summary judgment opinion and order. Dkt. 335 at 36-37. Contributory negligence has never barred recovery for intentional torts. Restatement (2d) of Torts § 481 (1965); *see also Fed. Trade Comm'n v. Walmart Inc*., 664 F. Supp. 3d 808, 836 (N.D. Ill. 2023).

Defendants attempt to dismiss Plaintiff's cited cases, *Santiago v. Lane,* 894 F.2d 281 (7th Cir. 1990), and *Scottsdale Ins. Co. v. Subscription Plus, Inc*., 299 F.3d 618 (7th Cir. 2002)*,* with flawed reasoning. They argue "there was not a negligence claim asserted" in *Santiago*. Dkt. 367 at 22. However, not only *was* there a negligence claim asserted in *Santiago*, but that is not the import of the case – and that is why Defendants' argument runs afoul. Critically, in *Santiago,* the defendants were *not allowed to* "argue that they cannot be held responsible" and blame the Plaintiff because "contributory negligence is not a defense to an allegation of intentional or reckless conduct." *Santiago,* 894 F.2d at 224 (citing *Teamsters Loc. 282 Pension Tr. Fund v. Angelos*, 762 F.2d 522, 527-28 (7th Cir. 1985)). Defendants also attempt to dismiss *Scottsdale*, simply because it involved an action for declaratory judgment, which overlooks the crucial fact that the court was analyzing "intentionally tortious" conduct. *Scottsdale,* 299 F.3d at 620. Similarly, Defendants' cited case, *Pearson*, does not analyze an intentional tort at all. Simply put, courts have accepted the obvious: that, but for the defendants' intentional acts, the plaintiff or another party would have had no occasion to be adjudged careful or careless, making it inappropriate (or worse) to allocate to the plaintiff any part of the fault for their harms and losses.

To this end, Plaintiff withdraws the motion with respect to his NIED claim, which does not require the defendant to have purposefully tried to cause emotional damage. Plaintiff still maintains that the Court should bar any contributory negligence defense regarding Plaintiff's IIED claim.

DATED: March 18, 2024                    Respectfully submitted,


                                         s/ Jonathan Loevy


Jonathan Loevy
Quinn K. Rallins
Wally Hilke
Meg Could
LOEVY & LOEVY
311 N. Aberdeen, 3rd FL
Chicago, IL 60607
(312) 243-5900

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan Loevy, hereby certify that I served the foregoing on March 18, 2024, using the CM/ECF system, which effected service on all counsel of record.

<u>s/ Jonathan Loevy</u>