IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| WILLIE T. DONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.:  2:17-CV-00032 |
| | ) | |
| BRUCE OUTLAW, CARLA K. PYLE, | ) | |
| As special administrator of the ESTATE | ) | |
| OF JOHN E. JELKS, JR., CITY OF | ) | |
| GARY, and other as-yet unknown | ) | |
| Employees of the City of Gary, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT RESPONSE TO MOTIONS IN LIMINE**

Come now, the Defendants, CITY OF GARY (hereinafter referred to as "City"), BRUCE OUTLAW (hereinafter referred to as "Outlaw"), and CARLA K. PYLE, as special administrator of the ESTATE OF JOHN E. JELKS, JR. (hereinafter referred to as "Jelks") ("collectively referred to as "Defendant Officers" "City" or "Defendants"), for their response to Plaintiff's, Willie T. Donald ("Donald"), Motions in Limine ("Motion").  Defendants' response is as follows[1]:

I.    **DONALD'S MOTION IN LIMINE TO BAR THE OPINIONS OF EXPERT JEROME EZELL MUST BE DENIED BECAUSE IT IS PREMATURE, AND THE OPINIONS OFFERED  SATISFY FEDERAL RULE 702.**

A.    **Background**

On February 27, 1992, Rhonda Fleming f/k/a Rhonda Williams ("Fleming") was robbed.

On March 3, 1992, Fleming gave a statement to the Gary Police Department ("Gary Police")

---

[1] The Federal Rules of Evidence do not explicitly authorize in limine rulings. However, a district court has inherent authority to manage the course of trials. Fed. R. Evid. 103(c); *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984). District courts have broad discretion in ruling on motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 874-75 (7th Cir. 2011). However, evidence should be excluded only when inadmissible on all possible grounds. *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). As a result, in some instances courts should defer rulings until trial, particularly where context would be helpful in determining matters such as relevancy, foundation, and potential prejudice. *Id.*

stating that Donald was the man that robbed her. Fleming identified Donald two more times: once on April 6, 1992, during the Habeas Corpus Proceeding, and a second time at Donald's criminal trial, which occurred in June of 1992. After a criminal trial, Donald was convicted.

Donald was granted a new trial based on a statement and affidavit secured from Fleming obtained by the Northwestern Medill School of Journalism Innocence Project ("Innocence Project"). [*See* attached as Exhibit 1, Affidavit of Rhonda J. Fleming; and Exhibit 2, the Statement of Fleming.] The Defendants have denied any wrongdoing and contend that Fleming's identification of Donald leading to his conviction was untainted. The recant by Fleming came almost twenty (20) years after Donald's conviction and was secured in the criminal proceedings.

The affidavit and statement, processed by investigator Sergio Serritella ("Mr. Serritella") of the Innocence Project, got Fleming to state that Donald was not the person that committed the crimes against her in 1992. Mr. Serritella was involved in Donald's case for the Innocence Project under an investigation company Tactical Solutions, but his role shifted to "advocacy journalism". [See attached as Exhibit 3, Serritella Dep at pp. 8-9, 160-161.] Mr. Serritella has certifications dealing with the investigation of crimes. *Id.* at p. 13. Mr. Serritella did "surveillance" on Fleming outside her home. *Id.* at p. 93.  On January 31, 2022, consistent with this Court's discovery plan, the Defendants disclosed Mr. Ezell as an expert witness with his report. [See attached as Exhibit 4, Expert Disclosure and Mr. Ezell's expert report.] Mr. Ezell's expert report was extensive and seventeen (17) pages long. Donald's Counsel never deposed Mr. Ezell.

Mr. Ezell is a former Indiana State Police law enforcement officer and currently serves as a credentialed, certified Legal Instructor for the Indiana Law Enforcement Academy. *Id.* at p. 1. Mr. Ezell has forty-one (41) years of experience specifically for analyzing investigations and proper procedure for approaching witnesses, conducting unbiased interviews, and preparing statements for admissibility in a legal proceeding. *Id.* at p. 2.  Mr. Ezell's opinions were based on

his knowledge, training, experience and methodology related to conducting and analyzing criminal investigations for accuracy and correctness of taking of statements, taking unbiased interviews, and preparing victim statements. *Id*. at p. 2. Mr. Ezell found the process for how Mr. Serritella obtained the statement from Fleming for use in Donald's criminal proceeding to be flawed because it violated standard law enforcement methodology for taking statements. *Id*. at p. 9. Mr. Ezell viewed a videotaped statement of Fleming and noted media related distractions. *Id*. Mr. Ezell found that Mr. Serritella's leading questions were improper and violated appropriate standards found at 2019 Report of the Third Circuit Task Force on Eyewitness Identification, p. 66; *Id*. at p. 10.  Mr. Ezell identified the applicable methodology of non-leading, objective questioning as described in his report used by professionals. *Id*.

Mr. Ezell also found that Mr. Serritella and the Innocence Project's tactics did not satisfy acceptable law enforcement methodology because it was leading and suggestive. *Id*. at pp. 10-12. Mr. Ezell listed that his opinions were based on the 2019 Report of the Third Circuit Task Force on Eyewitness Identifications, Model Policy Eyewitness Identification September of 2016 – International Association Chiefs of Police as well as other accepted sources. *Id*. at pp. 2-3. Mr. Ezell reviewed the video taped statement of Fleming, all her depositions and statements, as well as the depositions of Mr. Serritella and the Innocence Project. *Id*. at pp. 2-3.  In essence, Mr. Ezell found that the Innocence Project and Mr. Serritella failed to identify any standardized investigative methodology when engaging Fleming and another victim. *Id*. at pp. 9-17. Mr. Ezell also identified other investigations conducted by the Innocence Project. *Id*.

### B.    Legal Analysis

The Seventh Circuit has endorsed a two-step analysis for district courts to use in evaluating expert testimony under Rule 702: first, the court must determine whether the expert's testimony is "reliable;" and second, the court must determine whether the expert's testimony is "relevant."

*Bamcor LLC v. Jupiter Aluminum Corp.*, 767 F. Supp. 2d 959, 973–74 (N.D. Ind. 2011). Initially, to satisfy the reliability requirement, the expert must be qualified in the relevant field and his opinion must be based on sound methodology. *Bamcor LLC*, 767 F. Supp. 2d at 974.

After the Court is satisfied with the qualifications of the designated expert, it engages in a gatekeeping function that focuses on an examination of the expert's methodology. *Id*. at p. 974. An expert's work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. *Id. Daubert* outlined the following factors in assessing an expert's methodology: (1) whether a theory or technique ... can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or method has met with general acceptance. *Bamcor LLC v. Jupiter Aluminum Corp.*, 767 F. Supp. 2d 959, 974 (N.D. Ind. 2011) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. at 593-94.) However, this list should be flexible to account for the various types of potentially appropriate expert testimony rather than definitive or exhaustive. *Bamcor LLC*, 767 F. Supp. 2d at p. 974.

Once the evidence is deemed reliable, it still must be excluded if it is not relevant, which under Rule 702 means that it is not likely "to assist the trier of fact to understand the evidence or determine a fact in issue ...." *Id.* at 975. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469 (1993); *See also* Federal Rule of Evidence 702.

In the present case, Mr. Ezell has satisfied the Seventh Circuit's two-step analysis. First, Donald would be hard pressed to argue that Mr. Ezell is not qualified. Mr. Ezell is more than

qualified to discuss the investigations performed by the Innocence Project and Mr. Serritella which was used in Donald's criminal case to secure a new trial, and which is now being offered presently in his civil case. In an effort to bar Mr. Ezell's opinions, Donald attempts to narrowly paint Mr. Serritella as a "teaching assistant" and downplays the role of the Innocence Project in gathering information for Donald's use in his criminal case. This argument would only have merit if the investigation and statement gathered from Fleming stayed with Mr. Serritella and the Innocence Project for "academic purposes" or "academic research" only.  Mr. Ezell, an expert on how to approach and gather information from a witness like Fleming to ensure an untainted statement, is so very important in this case. Donald's argument essentially is that the investigation performed by the Innocence Project and Mr. Serritella should be shielded from expert scrutiny because it is described as "journalism".  This is not correct, and Mr. Ezell is qualified.

Next, Mr. Ezell's opinions more than satisfy the reliability requirement because they are based on sound methodology. Mr. Ezell identified the standard law enforcement methodology for engaging, approaching and taking statements of witnesses like Fleming who will provide testimony in a criminal court proceeding.  He identified the methodology missing from Mr. Serritella and the Innocence Project's interactions with Fleming. The methodology identified by Mr. Ezell simply provides that investigators should maintain objectivity when dealing with a witness to ensure information offered in a criminal proceeding are based on accurate information. How could anyone argue with that? It also calls for the information gatherer, in this case Mr. Serritella and the Innocence Project, to maintain impartiality by eliminating leading, suggestive questions. Mr. Ezell's opinions cited reliance on generally accepted sources particularly the 2019 Report of the Third Circuit Task Force on Eyewitness Identifications. Mr. Ezell did not identify any known or potential rate of error in the methodology used or sources listed.

Mr. Ezell reviewed the depositions of the Innocence Project and Mr. Serritella and found that they did not meet the methodology principles generally accepted when gathering witness information that will be offered to a court in a criminal proceeding. Mr. Ezell noted that Mr. Serritella's methodology described as "advocacy journalism" or "advocacy investigation", used to secure Fleming's recant, was a non-standardized methodology. Mr. Ezell did not list the method of "advocacy investigation" identified in any of the peer reviewed material he reviewed as an acceptable methodology when securing a statement from a witness to be used in a criminal proceeding. The same opinion was held for his review of the Innocence Project representative Elizabeth Bennett Hebbeln. Mr. Ezell has not offered "unsupported speculation" and/or "subjective belief" as stated in Donald's Motion. Mr. Ezell's opinions are based on sound methodology and the data reviewed in this case and are therefore reliable.

Lastly, Donald seeks to attack Mr. Ezell's opinions on "relevancy" grounds on the strange argument that students of the Innocence Project or Mr. Serritella did not use law enforcement standards when getting Fleming to recant. This argument proves too much and underscores the Defendants' point. Mr. Ezell's opinions will assist the trier of fact in analyzing the process by which Fleming's recant by Mr. Serritella and the Innocence Project were secured and the applicable standards that should have been followed. This goes to the heart of Donald's due process and negligence claims against the Defendants.

Donald's Motion also criticizes Mr. Ezell's opinion because he reviewed "a handful of documents from the case and three reports and policies on eyewitness identification." However, the soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir.2000). Donald's reliance on *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 786 (7th Cir. 2017) and many other cases are misplaced. In

*Gopalratnam*, the District Court's bar of an expert was upheld when the expert's opinion was based on "speculation" and "unfounded inferences." *Gopalratnam*, 877 F.3d at p. 783. These facts do not apply to Mr. Ezell. He identifies very specifically what Mr. Serritella, and the Innocence Project did or did not do. Donald's cite to the case U*nited States v. Moore*, 521 F.3d 681, 684 (7th Cir. 2008) also does not support his position. The *Moore* case found that a judge is not obliged to look into the questions posed by Rule 702 when neither side either requests or assists. *Moore*, 521 F.3d at p. 685. Mr. Ezell's opinions and report demonstrates the facts upon which it rests and satisfies Rule 702.

 Donald's reliance on the *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991), *amended in part on other* grounds, 957 F.2d 301 (7th Cir. 1992) is also incorrect and an incomplete reading of the authority. In *Benson*, the Court held that credibility is not a proper subject for expert testimony. *Benson*, 941 F.2d 598, 604. In contrast to the situation described in *Benson*, the Defendants did not designate Mr. Ezell to opine that Fleming is "lying" or "not telling the truth". The expert opinions will provide the jury the appropriate context surrounding Fleming recantation the investigative methods used by Mr. Serritella and the Innocence Project to secure the same.

Lastly, Donald's Motion takes exception to facts discovered by Mr. Ezell in newspaper articles about the Innocence Project's improper behavior when gathering information from recanting witnesses. Donald's argument that Mr. Ezell's statements about the Innocence Project derived from newspaper sources as not "relevant" is premature. At trial, should Mr. Ezell approach a subject that violates the evidence rules, the Court can make the ruling at that time. Donald's argument also ignores that an expert witness is allowed to explain the facts underlying an opinion, even if they would not be independently admissible. *Matter of James Wilson Associates*, 965 F.2d 160 (7th Cir. 1992). Why should the jury hear about other investigations by the Innocence Project? Well, it may explain preparation, knowledge, and plans of the Innocence Project as it related to

Fleming.  Will the jury be confused by the testimony from Mr. Ezell about the Innocent Project students and Mr. Serritella's lack of investigative standards? Absolutely not. It will only answer lingering questions and allow the jury to appropriately process Donald's due process claims.  In sum, Donald's Motion to bar Mr. Ezell must be denied because he satisfies the requirements of Federal Rule 702 and all other just and proper relief.

**II.    DONALD'S MOTION SEEKING TO BAR "BAD ACTS" RELATED TO THE INNOCENCE PROJECT MUST BE DENIED BECAUSE THE EVIDENCE SATISFIES FEDERAL RULE 404 (B).**

**A.    Federal Rule 404 (b)**

Shockingly, Donald argues that if the Innocence Project and/or Mr. Serritella inappropriately coerced, tricked, misled, or pressured Fleming to recant, this information would be "wholly unrelated" to the case. What is surprising is that the basis of Donald's claim against the Defendants is that Officer Outlaw "pressured" Fleming in 1992 to identify Donald leading to his conviction.

In the process of hiring expert Mr. Ezell, it was discovered that the Innocence Project had a pattern of inappropriate witness contact when securing exonerations. The Defendants' expert, Mr. Ezell, identified many newspaper articles, which are public record, showing how the Innocence Project used less than ethical tactics to free criminal defendants.  Donald now asks that this Court bury its head in the sand as to this information. In February of 2015, a gentleman by the name of Alstory Simon ("Simon") filed a lawsuit against the Northwestern University (Innocence Project) alleging that he was coerced into confessing to a murder in a separate investigation. [See attached as Exhibit 5, Memorandum and Opinion in *Simon v. Northwestern*; See Exhibit 6, Nov. 6, 2014, Milwaukee Newspaper Article.] The Innocence Project was noted as "fabricating evidence". *Id.*  In Simon's case, two witnesses recanted based on promises made by the Innocence Project representatives. Project investigators flirted with witnesses, gave witnesses drug money,

8

and lied about their identities, as described by a Chicago Tribune article cited by expert Jerome Ezell.

Donald's blanket objection to the prior bad acts of the Innocence Project should be disregarded. Generally, evidence of prior bad acts is inadmissible to show propensity to commit a crime. See Fed. R. Evid. 404(b)(1) However, such evidence is admissible for another purpose such as showing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. See Fed. R. Evid. 404(b)(2); *U.S. v. Richards*, 719 F.3d 746 (7th Cir. 2013)(holding that the district court's admission of "California calls" in a drug dealing case as prior bad acts proper under Rule 404(b) because they were similar and close enough in time to be relevant.)

Rule 403 balancing applies with full force when considering the admission of prior bad acts evidence. *Richards*, 719 F.3d at p. 762. The inquiry turns on whether the evidence prejudices the non-offering party in some unfair way that substantially outweighs the value of the evidence in determining the truth. *Id*. at p. 762. Evidence is unfairly prejudicial only to the extent that it will cause the jury to decide the case on improper grounds. *Id*. In the present case, the 404 (b)(2) requirements have been met. The evidence of prior bad acts of the Innocence Project is not offered against Donald to show that he committed any crime. Nor is the evidence offered to show the propensity of the Innocence Project to fabricate evidence. The evidence is offered to show the Innocence Project's plan and preparation methods undertaken to secure recantation testimony from witnesses like Fleming.

In Donald's case, only one (1) witness recanted, and that was Fleming. It could have very well been two (2) witnesses, but victim Belinsky (now known as Kimery Camacho) was able to withstand the Innocence Project's pressure tactics. [See attached as Exhibit 7, Deposition of Kimerly Belinsky at pp. 40 - 42.] Donald's argument that the evidence is not relevant and would

9

result in unfair prejudice under Fed. R. Evid. 403 simply is not accurate. Here, it is not even the bad acts of Donald that is being offered into evidence which weakens Donald's argument that he would be unfairly prejudiced. The Innocence Project's plan and preparation methods involving getting witnesses to recant after twenty (20) or so years of silence is relevant.

The probative value of this evidence significantly outweighs any prejudice Donald may suffer, if any.[2] The Innocence Project secured the recant of Fleming. The students and investigator in the Donald case worked for the Innocence Project, the same entity linked to the Simon case and other prior problems that led to witness recants. Donald cites the *Rivera v. Guevara*, No. 12-CV-04428, 2018 WL 11468923 (N.D. Ill. June 1, 2018) and *United States v. Gallardo*, No. 13 CR 660, 2015 WL 832287 (N.D. Ill. Feb. 25, 2015) cases, but neither are factually applicable to the current facts outlined in Donald's matter.

In sum, Donald's Motion should be denied because the prior bad acts of the Innocence Project and other representatives are admissible under Federal Rule 404 (B)(2).

B.    **Donald's Attempt to Bar Potential Testimony of David Protess, Rebekah Wanger, Sergio Serritella, and Northwestern's 30(b)(6) representative Elizabeth Bennett-Hebbeln Is Premature and Should Be Denied.**

Donald's Motion seeks to bar and/or limit the testimony of David Protess, Rebekah Wanger, Mr. Serritella, and Elizabeth Bennett-Hebbeln. Again, this Motion is premature and repetitive. It simply rehashes the argument made by Donald seeking to bar testimony by Innocence Project representatives. Courts have the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds. *Hawthorne Partners v. AT & T Techs., Inc*., 831

---

[2] In this section of Donald's Motion, he makes a damaging admission which is stated as follows: "What matters is how the individuals who investigated Plaintiff's innocence acted in that investigation, not how other individuals conducted separate and unrelated investigations." Mr. Ezell is being offered as an expert witness on the issue of whether the Innocence Project and Mr. Serritella used proper standards in getting Fleming to recant. This admission contradicts Donald's original argument that describes the Innocence Project and Mr. Serritella as "journalists", downplaying their role as "investigators" which brings into focus why Mr. Ezell's expert opinion is so very important.

F. Supp. 1398, 1400 (N.D. Ill. 1993) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984).

Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context. *Hawthorne Partners*, 831 F. Supp. at 1400. See also *Wilcox v. CSX Trans., Inc.*, No. 1:05-CV-107, 2007 WL 1576708, at p. 3 (N.D. Ind. May 30, 2007)(where the court acknowledged that determination of whether any evidence should be precluded because it is needlessly cumulative can only be made at the time of trial.) Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. See Fed. R. Evid. 401.

In this case, David Protess was the head of the Innocence Project. The Defendants attempted to depose him, but his lawyers provided a medical note which stated he could not sit for deposition. [See Exhibit 8, Protess Medical Note.] Donald even admits in his Motion that there are certain questions and information from Mr. Protess that would be admissible related to Donald, but then goes on to state that "any other testimony he would give is improperly attenuated" and should be barred. This does little to provide the Parties or the Court with guidance as to the actual testimony sought to be excluded and demonstrates why the Motion is premature. Moreover, as previously stated, prior acts of misconduct or bad acts of witnesses are not automatically inadmissible. See Fed. R. Evid. 404(b)(2); *U.S. v. Richards*, 719 F.3d 746 (7th Cir. 2013). Innocence Project representative's preparations and plans, as used in other similar cases to secure a recant would definitely aid the jury in the Donald case.

The same logic and rationale holds true for Rebekah Wanger, Mr. Serritella, and Northwestern's 30(b)(6) representative Elizabeth Bennett-Hebbeln. All are connected with the Innocence Project in some capacity. Rebekah Wanger was a program assistant at the Innocence

Project and has information regarding the organization's participants who were "actual investigators" contradicting Donald's assertions that this case is solely about "journalism". [See attached as Exhibit 9, Wanger Dep. pp. 129-130.] Mr. Serritella performed investigation, actual surveillance on Fleming, and ultimately was the key investigator in securing Fleming's recantation. Again, the standards and criteria used by the investigators, Mr. Serritella, and others to secure Fleming's recant are relevant.

Donald cites the case *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011) that is not binding on this Court and factually inapposite to exclude the testimony of Elizabeth Bennett-Hebbeln. The *Sara Lee Corp* case found that the deposition testimony may be admitted for purposes of explaining the corporate representative's licensing policies and establishing whether corporation ever believed that one of the parties had violated those policies. *Sara Lee Corp.*, 276 F.R.D. at pp. 503-504. *Id*. at p. 504. The Court further found that if at trial the plaintiff sought to admit other portions of the deposition for some other purpose, the Court would consider whether the underlying corporate knowledge is sufficiently reliable to substitute for personal knowledge. *Id*. The bottom line is that the Court should have the opportunity to make the call whether a hearsay rule has been violated or a witness's testimony is inadmissible. Mrs. Bennett-Hebbeln was the corporate representative of Northwestern – the school responsible for the Innocence Project. Mrs. Bennett-Hebbeln can speak Northwestern's policies and procedures as applied to the Innocence Project. Any questions involving hearsay can be addressed at trial.

In sum, Donald's Motion must be denied and all other just and proper relief in the premises.

### III. ANY MOTION SEEKING TO BAR EVIDENCE OF INDIVIDUAL DEFENDANTS' FINANCIAL STATUS SHOULD BE DENIED BECAUSE DONALD HAS SOUGHT PUNITIVE DAMAGE.

Donald now seeks to bar evidence of the individual Defendants' finances. However, Donald seeks the recovery of punitive damages. [See DKT Entry 1, Donald's Complaint p. 23.] The Supreme Court has observed that the amount of a defendant's wealth is traditionally held to be relevant and admissible to the assessment of punitive damages. See, e.g., *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 and n. 28, 464, 113 S.Ct. 2711, 2722–23 and n. 28, 2723, 125 L.Ed.2d 366 (1993); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 269, 270 and n. 31, 101 S.Ct. 2748, 2761 and n. 31, 69 L.Ed.2d 616 (1981)(holding that municipalities are not liable for punitive damages under § 1983 in part because of the potential for improper influence if evidence of municipalities' available wealth were introduced.)

The City does agree that evidence offered by <u>any</u> party (Plaintiff and Defendants alike) solely to garner sympathy should be prohibited. This ruling should cut both ways. However, Donald's present Motion must be denied, as drafted, because it would bar individual Defendants from offering evidence on their financial status which is relevant to the pending punitive damages claim.

## IV.    DONALD'S MOTION SEEKING TO BAR POLICE OFFICERS FROM WEARING POLICE ATTIRE, BADGES, AND/OR MEDALS DURING TRIAL SHOULD BE DENIED AS OVERLY BROAD.

Donald seeks to bar Defendants and other third-party witnesses from wearing law enforcement uniforms, badges, and/or medals during the trial. Donald does not cite any controlling legal authority from an Indiana federal court to support his argument. Nor is there any support cited of a 7th Circuit opinion in furtherance of Donald's position. This Motion is overly broad and must be denied. *Aspen American Ins. Co.*, 2021 WL 3616161 (N.D. Ind. 2021). Donald cannot reasonably expect an officer, on duty and called to testify, to go home and change into his uniform if an emergency occurs. In sum, this Motion must be denied.

**V.    DONALD'S MOTION SEEKING TO BAR DEFENDANTS FROM MAKING REFERENCE TO THE PROSECUTOR'S ROLE IN THE UNDERLYING CRIMINAL CASE IS IMPROPER.**

Donald argues that that the Defendants should be barred from arguing the prosecutors had a role in Donald's current claims. First, Donald attempts to state what the Defendants may do before actually hearing any testimony or evidence. Second, Donald's Motion fails to acknowledge authority contrary to his legal position. There is nothing that expressly prohibits the police or City from arguing that they did not withhold material, exculpatory evidence and highlighting various responsibilities that rest with the prosecutor, rather than the police, when it can be shown that injury might have been caused by a prosecutorial decision. *Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir. 1994)(holding that police who bilked the prosecutor were liable for the injury their deceit caused, but if the prosecutors had known the truth and proceeded anyway then the prosecutorial decisions would be the cause of the injury.)

In the present case, the prosecutor that tried Donald in 1992 met with Fleming before the criminal trial, and created an office note which indicated that Fleming, after conversations with her, was not completely sure Donald committed the crimes. [See Exhibit 10, Benson Deposition, pp. 323-325.] Despite this information, the prosecutor felt comfortable enough moving forward with Donald's criminal trial and secured a conviction. Consistent with the rationale in the *Buckley* case, the Defendants cannot be precluded from discussing the prosecutor's handling of Donald's prosecution. Donald cites *Alexander v. City of S. Bend*, 320 F. Supp. 2d 761 (7th Cir. 2006) but does not embrace a critical part of the holding. In *Alexander*, the Court, in a § 1983 case against a city, police department, and officers for wrongful conviction, similar to Donald's case, found, in part, as follows:

> But the Plaintiff must establish more than the fact that mistakes were committed, or that the investigation was inadequate. **He must show that the Defendants' conduct was deliberate, that they knew that Mr. Alexander**

14

**was innocent, and fabricated evidence to wrongfully convict him.** This has not been done.

*Alexander v. City of S. Bend*, 320 F. Supp. 2d at p. 785. (emphasis added)

It can hardly be argued that the Defendants cannot explain how it was not their conduct which resulted in Donald's conviction. The Defendants are not arguing that they violated Donald's constitutional rights but since the state prosecutors, unknowingly, chose to use "fabricated and manipulated evidence" during criminal proceedings it should not be liable. As in *Alexander*, the Defendants argue just the opposite, which is they are not liable to Donald and there is no evidence that their conduct was deliberate that would result in a wrongful conviction.

Donald's Motion should be denied.

## VI.   DONALD'S MOTION  TO BAR TESTIMONY OR EVIDENCE OF A POLYGRAPH  EXAMINATION MUST BE DENIED BECAUSE IT IS PERIPHERAL.

After he was convicted, Donald underwent a polygraph test to get his sentence reduced. [See Exhibit 11, Deposition of Joe Merryman, Jr., at pp. 85-88.] The 7th Circuit has not yet adopted a blanket rule excluding the use of polygraph evidence. *U.S. v. Resnick*, 823 F.3d 888 (7th Cir. 2016)(holding that district courts are given "considerable deference" on whether to admit polygraph evidence and could not find plain error on the decision to admit the evidence in the absence of some extraordinary reason.)  It would not be reversible error to allow evidence that Donald had taken a polygraph test when the fact is merely peripheral.  *U.S. v. Robbins*, 197 F. 3d 829 (7th Cir. 1999).

The evidence demonstrates that Donald took steps to get his sentence modified (not vacated) if he agreed to take the polygraph test. This is relevant to combat Donald's claim of continuous, steady, belief of innocence.  In conclusion, Donald's Motion which seeks to bar any reference to the polygraph test taken after his conviction should be denied.

**VII.   DEFENDANTS HAVE NO OBJECTION TO DONALD'S MOTION TO BAR THE INTRODUCTION OF ANY EVIDENCE RELATING TO SETTLEMENT SO LONG AS IT APPLIES TO ALL PARTIES.**

No objection, so long as the order applies to all parties.

**VIII.   DEFENDANTS HAVE NO OBJECTION TO DONALD'S MOTION TO BAR ANY REFERENCE TO JURORS' PECUNIARY INTERESTS SO LONG AS IT APPLIES TO ALL PARTIES.**

No objection, so long as the order applies to all parties.

**IX.   DONALD'S MOTION TO BAR DUPLICATIVE WITNESS EXAMINATIONS SHOULD BE DENIED.**

Donald's Motion bypasses the Federal Rules in a clear attempt to strip away each Defendants' right to question witnesses, particularly for bias and impeachment. <u>Any party</u>, including the party that called the witness, may attack the witness's credibility.  See Fed. R. Evid. 607.  Neither does Federal Rule of Evidence 611, which covers mode and order of examining witnesses and presenting evidence, provide the relief sought by Donald.  See Fed. R. Evid. 611.

The Defendants all have separate lawyers, but all their interests are not completely aligned. For example, Donald has brought essentially a *Monell* claim against the City and must trace the alleged constitutional deprivation believed to be suffered by Donald to some municipal action (i.e., a "policy or custom"). *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214 (7th Cir. 2021).  The officers would have little interest in this issue or line of questioning. In sum, Donald's must be denied.

**X.   DEFENDANTS AGREE THAT DONALD'S MOTION TO EXCLUDE NON-PARTY WITNESSES FROM THE COURTROOM SHOULD BE GRANTED, IN PART, BUT DENIED AS TO THE ADVANCED REMEDY SOUGHT IF A VIOLATION OCCURS.**

The Defendants have no qualms with this Motion, generally.  However, Donald's Motion should be denied to the extent it fashions an advanced penalty should a violation occur. This

part of Donald's Motion must be denied and addressed by the Court should a violation occur. *Leftridge v. Speedway* LLC, 2019 WL 8270582 (N.D. Ind. 2019)(holding that a separation of witnesses request is not properly brought as part of a motion in limine.)

## XI.    DEFENDANTS' MOTION TO BAR 'INADMISSIBLE' NON-RETAINED EXPERT TESTIMONY SHOULD BE BARRED BECAUSE THESE WITNESSES WERE PROPERLY DISCLOSED AND THE REQUEST IS PREMATURE.

Donald seeks to bar non-retained expert testimony identified by the Defendants. This Motion should be denied as premature. On January 31, 2022, Defendants disclosed the following individuals as non-retained experts: David Moore, Philip Benson, Catherine Trevino (Lake), Joe Jeffreys Merryman, Jr., Sergio Serritella, and Thomas Barnes. Donald, generally, states that none of the disclosed opinions are admissible. This Motion is premature and must fail.

Donald admits to having no objection to lay testimony of the witnesses identified. However, he disputes allowing these same witnesses to give expert testimony regarding various topics identified in their January 31, 2022, non-retained expert disclosure. Donald's Motion demonstrates a misunderstanding of Federal Rule of Civil Procedure 26(a)(2)(C). With respect to subject matter, the Rule requires only that a disclosure must state "the subject matter on which the witness is expected to present evidence." *Bezingue v. Steuben Lakes Regional Waste District,* 507 F.Supp.3d 1021 (N.D. Ind. 2020)(holding that Defendant's non-retained expert disclosures were satisfactory because the Plaintiffs were on notice that the witness would testify regarding their "property rights," as well as the "surveying, planning and design" of the project.) Courts must take care against requiring "undue detail", keeping in mind that non-retained witnesses have not been specially retained and may not be as responsive to counsel as those who have. *Bezingue*, 507 F.Supp.3d at p. 1029.

17

The identification of David Moore, Mr. Serritella, Catherine Trevino, and Philip Benson strictly satisfied Federal Rule 26 (a)(2)(C).  These witnesses are either trained prosecutors or investigators that have skills that may assist the jury in understanding the progression of Donald's criminal case. The case *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) cited by Donald actually supports the Defendants' position. In *Jimenez*, the Court held that when an expert offers an opinion relevant to applying a legal standard such as probable cause, the expert's role is limited to describing sound professional standards and identifying departures from them. *Jimenez*, 732 F.3d at p. 721.  The Court also found that the district court drew the line and did not allow the witness to stray into impermissible territory.  *Id*. at p. 721.

Consistent with *Jimenez*, this Court should be provided with the opportunity to draw the appropriate line that will not allow any witness to stray into impermissible territory.   Donald's claim of privilege related to Mr. Merryman's testimony must be made and sustained on a question-by-question basis. *U.S. v. Lawless*, 709 F.2d 485 (7th Cir. 1983).  A blanket claim of privilege asserted in a motion in limine is unacceptable.  Similar to the Court in *Jimenez*,  this Court must be provided the opportunity to assess the witness and make the appropriate ruling if he strays into impermissible territory. [3]

 Donald's arguments related to Thomas Barnes ("Barnes") and Brian Evans ("Evans") must meet the same fate.  Barnes was the Mayor of Gary, Indiana from 1988-1995 and was properly disclosed as a non-retained expert regarding his expertise related to the *Monell* claim against the City.   Donald rehashes the same arguments made earlier as to Evans being a 30 (B)(6) witness of the City.  The *Sara Lee Corp. v. Kraft Foods Inc*., 276 F.R.D. 500, 503 (N.D. Ill. 2011) found that at trial the Court would consider whether the underlying corporate knowledge is sufficient.  Surely

---

[3] Donald's incorporates by reference his arguments made in Motion in Limine 2 related to Sergio Serritella's purported testimony.

Evans, who was employed in the early 1990's with the Gary Police Department, and who worked his way up to the Chief of Police by the time Donald's lawsuit was filed, would have relevant information related to the present a *Monell* claim.

In sum, Donald's Motion to bar identified non-retained expert testimony that is "inadmissible" including "expert" testimony should be denied.

### XII.    DONALD'S MOTION TO BAR 'IRRELEVANT' MATERIAL FROM CRIMINAL, APPELLATE, AND POST-CONVICTION PROCEEDINGS SHOULD BE DENIED AGAIN AS PREMATURE.

Donald was convicted in 1992. Donald alleges in his Motion that he fought for nearly twenty-four years to overturn his wrongful conviction. Rather than rely on Donald's self-serving statements, the Defendants obtained a complete record of all the underlying proceedings. The record factually tracks everything that Donald and his lawyers did from 1992 through 2016 when Donald was granted a new trial.

Donald now seeks to shield from the jury relevant facts, statements, and actions he took between 1992 and 2016 by raising blanket objections. The transcripts and records from Donald's criminal trial, the appellate proceedings, Donald's petition to transfer to Indiana Supreme Court, habeas corpus proceeding, post-conviction relief proceedings and other documents relating to Donald's underlying case are relevant to the issues in this case. Donald concedes that "some parts of the criminal trial transcript are plainly admissible". This same rationale holds true for other parts of the underlying record. The initial premise of Donald's Motion is contradictory.

On one hand, Donald argues that criminal trial transcript is barred by the hearsay rule, but on the other hand acknowledges that parts, most likely, could be admissible if it meets a hearsay exception or if not hearsay at all, i.e. party opponent admissions. The fact that Donald has admitted in his Motion that parts of the criminal transcript would be admissible either as not hearsay or an exception to the hearsay rule is reason to deny the Motion. The same rationale holds true for other

parts of the underlying record involving Donald's criminal case. Donald misapplies the Seventh Circuit case *Jimenez v. City of Chicago*, 732 F.3d 710, 719 (7th Cir. 2013) to support his argument. The *Jimenez* case did not find that a defendant in a wrongful conviction case is barred from listing the criminal transcript as an exhibit for use at trial or the records of any other underlying proceedings. *Jimenez*, 732 F.3d at p. 719. The issue in *Jimenez* did not deal with a motion in limine seeking to limit a defendant sued in a wrongful conviction case from using an underlying criminal trial transcript. *Id*. In fact, the issue dealt with a ruling made by the district court Judge, <u>at trial</u>, as to the use of the criminal transcript. *Jimenez* underscores the premature nature of Donald's Motion. *Id*.

As the court did in *Jimenez*, this Court should determine the admissibility of evidence at trial. Generic arguments that the criminal transcript or other parts of Donald's criminal proceeding "constitute hearsay without meeting any exception" or lacks "relevance" should be disregarded and be taken up at trial. Part of what Donald has to show is that the police officers in this case withheld exculpatory evidence that was material – meaning there is a reasonable likelihood that the result in the criminal proceeding would have been different if the evidence had been disclosed. See 7th Circuit Pattern Instruction 7.14. Records from Donald's underlying criminal case are relevant to this point because it shows exactly what occurred which led to Donald's conviction. Many of the witnesses involved in Donald's criminal case will likely testify and the use of the criminal transcript would be helpful in certain parts of their examination.

Donald's reliance on *Penree v. Watson*, 2017 WL 3437680, at *3 (N.D.N.Y. Aug. 10, 2017), a case from New York, is not binding on this Court should be ignored. Defendants have not asked this Court to take judicial notice of another decision so Donald's reliance on *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997) and *Global Relief v. New York Times. Co*., 2002 WL 31045394 (N.D. Ill. 2002) are misplaced.

Donald's true motives are camouflaged in his Motion.  Donald has repeatedly attempted to argue that the result of his criminal trial would have been different had Gary police officers produced information from Fleming where she told the police that she saw the person who robbed her on March 1, 1992, while Donald was at work. [See Exhibit 12, Plaintiff's Motion to Correct Error, ¶5.]  Donald relies on the case *Evans v. Katalinic*,  445 F.3d 953 (7th Cir. 2006).  However, Donald's case is much different that *Evans*.

In *Evans*, the Court held that the defendants argument that the plaintiff was "collaterally estopped" (as a result of the pretrial suppression ruling) from raising the issue in his wrongful conviction suit was "absurd" because there was no indication that the court "decided" the issue when it denied plaintiff's motion to suppress as the motion was denied without prejudice. *Evans*, 445 F.3d at pp. 955-56.  The Court also found that plaintiff had  received a full innocence-based pardon from the governor of Illinois after the suppression hearing, expunging his criminal record. *Id*. The Court held that this left precious little upon which preclusive effect could be given to the ruling issued in the suppression hearing.  *Id*.

The facts of Donald's case are much different than what was described in *Evans*. The Indiana Court of Appeals issued a detailed eight (8) page opinion adverse to Donald's argument that the Fleming information believed to be withheld by the Gary police was in any way material. [See attached as Exhibit 13, Indiana Court of Appeals Opinion.]The most crucial difference between Donald and the plaintiff in *Evans* is that Donald has not received a full innocence-based pardon nor has there been DNA evidence clearing him of anything.

The Northern District has also found that preclusion principles prohibits a plaintiff in a wrongful conviction case from relitigating issues that had had the opportunity to address in the underlying criminal case.  *Alexander v. City of South Bend*,  320 F.Supp.2d 761 (N.D. Ind. 2004)(holding that Indiana's preclusion principles apply to Section 1983 wrongful conviction

actions and a plaintiff, who had a full and fair opportunity to litigate these issues at his criminal trial, cannot relitigate the same issues.)

In conclusion, Donald's Motion should be denied.

### XIII.    DONALD'S MOTION TO BAR THE DEFENDANTS' 'CONTRIBUTORY NEGLIGENCE' DEFENSE MUST BE DENIED BECAUSE THERE IS A STILL A NEGLIGENCE CLAIM PENDING.

Donald's Motion seeks to bar the defense of contributory negligence defense at trial. This Motion must fail because Donald has made a claim for negligence.  See DKT 335, Court's Order Denying Defendants' Motion for Summary Judgment, pp. 36-37. The defense of contributory negligence is available in a § 1983 action against a municipality when negligence is alleged. *Estate of Pearson ex rel. Pearson v. City of Fort Wayne, Ind.*, 2015 WL 4425981 (N.D. Ind. 2015)(holding that contributory negligence is a viable defense in a § 1983 action when negligence is alleged.) Donald relies on the *Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir. 1990) case to support his Motion.  However, the *Santiago* case is not applicable because there was not a negligence claim asserted.  Donald's reliance on *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 621 (7th Cir. 2002) moves us even farther from the facts in the present case as it involves an action for declaratory judgment under a general liability policy.

Lastly, in a vague reference not directly linked to his contributory negligence argument, Donald cryptically makes an argument that the Defendants should be prohibited from placing "blame" on Donald's defense attorney for his conviction. Donald does not cite strong legal authority to advance this point. The authority Donald does cite for this argument should be disregarded because it is not binding and are nothing more than general statements of law related to relevance. Donald must prove that any evidence he claimed was withheld by the Gary police was material, meaning there is a 'reasonable probability' that the result would have been different

had the suppressed evidence been put before the jury. *Goudy v. Cummings*, 922 F.3d 834, 842 (7th Cir. 2019).

Donald's attorney, former Mayor of Gary, Attorney Scott King ("Attorney King") has been identified as a witness. The actions taken by Attorney King would be relevant for the jury's consideration in determining whether the evidence claimed to have been withheld was truly material and would have made Donald's criminal trial different.

In sum, Donald's Motion barring the contributory negligence defense at trial and precluding relevant argument evidence related to Donald's attorney should be denied.

Respectfully submitted,

/s/ Michael E. Tolbert
Michael E. Tolbert, #22555-64
TOLBERT & TOLBERT, LLC
1085 Broadway, Suite B
Gary, Indiana 46402
mtolbert@tolbertlegal.com
Attorneys for Defendant City of Gary

/s/Lukas Cohen
Lukas Cohen, #21580-45
Walker Law Group
363 S. Lake Street
Gary, IN 46403
lukas@walkerlawgroup.biz
Attorneys for Carla K. Pyle Estate of Jelks

/s/Ricardo A. Hall
Ricardo A. Hall
Kopka Pinkus Dolin PC
9801 Connecticut Drive
Crown Point, IN 46307-1000
rahall@kopkalaw.com
Attorney for Defendant Bruce Outlaw

## CERTIFICATE OF SERVICE

I certify that on the 21st day of March 2025, a copy of the foregoing document was filed electronically with the Clerk of the Court using the Court's PACER system, which sent notification of such filing to all counsel of record.

/s/ Michael E. Tolbert
Michael E. Tolbert, #22555-64